781 F.2d 1334
 Emily Fuller GIBSON, Michelle Gibson and Melanie Gibson,
Plaintiffs-Appellants,
v.
UNITED STATES of America, William French Smith, Attorney
General of the United States; William Webster, Director,
Federal Bureau of Investigation (FBI); Will Heaton, Special
Agent, FBI; Brandon Cleary, Special Agent, FBI; Darthard
Perry aka Ed Riggs; the City of Los Angeles; Daryl Gates,
Chief, Los Angeles Police Department (LAPD), Defendants-Appellees.
 No. 83-6118.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Sept. 4, 1984.
Submission Vacated May 9, 1985.
Resubmitted May 30, 1985.
Decided Jan. 30, 1986.
 
 Lawrence Teeter, Los Angeles, Cal., for defendants-appellees.
 Stephen D. Petersen, Asst. U.S. Atty., Katherine Hamilton, Los Angeles, Cal., for plaintiffs-appellants.
 Appeal from the United States District Court for the Central District of California; A. Andrew Hauk, District Judge, Presiding.
 Before NORRIS and BEEZER, Circuit Judges; and MUECKE,* District Judge.
 NORRIS, Circuit Judge:
 
 
 1
 Plaintiffs Emily Gibson and her daughters, Michelle and Melanie, commenced this litigation on July 1, 1980, seeking compensatory and punitive damages for an alleged long-lasting conspiracy to violate their civil rights. The initial complaint joined as defendants the United States of America, the City of Los Angeles, two named FBI agents, and several unknown agents of the Los Angeles Police Department (LAPD) and the FBI. Detailed in this complaint is a farrago of allegations, the common theme of which is that from the late 1960's through the eve of this lawsuit federal and municipal agents sought to penalize and discourage Emily Gibson's controversial political activities through an unremitting campaign of terror and harassment. The Gibsons claim that this campaign violated their constitutional rights under the First, Fourth, Fifth, Ninth and Fourteenth Amendments and, in addition, seek relief under a variety of overlapping statutory theories.
 
 
 2
 After twice dismissing plaintiffs' complaint with leave to amend, the District Court finally dismissed their Second Amended Complaint with prejudice for failing "to specifically allege facts, not barred by the statute of limitations, sufficient to state a claim upon which relief can be granted." Plaintiffs brought a timely appeal from this final order of dismissal. We exercise jurisdiction over this appeal under 28 U.S.C. Sec. 1291. Conerly v. Westinghouse Electric Corp., 623 F.2d 117, 119 (9th Cir.1980). Moreover, we review the District Court's dismissal de novo, mindful that the "controlling standard, first enunciated in Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), is that an action may be dismissed for failure to state a claim only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " Sherman v. Yakahi, 549 F.2d 1287, 1290 (9th Cir.1977), quoting Conley, supra 355 U.S. at 45-46, 78 S.Ct. at 101-02.
 
 I. Sec. 1983 CLAIM AGAINST THE CITY
 
 3
 Plaintiffs seek to recover damages from the City of Los Angeles as well as several unnamed city agents under section 1983. Preliminarily, we uphold the dismissal of the City on the ground that Gibson failed to attribute the alleged tortious acts of city agents to an established city policy or procedure. It is settled law that "a municipality cannot be held liable under Sec. 1983 on a respondeat superior theory." Monell v. New York City Department of Social Services, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). Instead, plaintiff must allege that the action inflicting injury flowed from either an explicitly adopted or a tacitly authorized city policy. Monell at 690-91, 98 S.Ct. at 2035-36; Harris v. City of Roseburg, 664 F.2d 1121, 1130 (9th Cir.1981) (" 'Official policy' within the meaning of Monell [encompasses situations] where a municipality 'impliedly or tacitly authorized, approved, or encouraged' illegal conduct by its police officers.") (quoting Turpin v. Mailet, 619 F.2d 196, 201 (2nd Cir.), cert. denied, 449 U.S. 1016, 101 S.Ct. 577, 66 L.Ed.2d 475 (1980)). Because plaintiffs do not allege facts sufficient to satisfy the Monell predicate for municipal liability, we affirm the dismissal of the City of Los Angeles and its Chief of Police.
 
 
 4
 II. Sec. 1983 CLAIM AGAINST THE INDIVIDUAL CITY DEFENDANTS
 
 
 5
 The section 1983 claim against the individual city defendants is less easily resolved. To make out a cause of action under section 1983, plaintiffs must plead that (1) the defendants acting under color of state law (2) deprived plaintiffs of rights secured by the Constitution or federal statutes. See Smith v. Cremins, 308 F.2d 187, 190 (9th Cir.1962). Giving the Second Amended Complaint the sympathetic construction required at the motion to dismiss stage, we believe that the Gibsons have alleged facts sufficient to state a claim that city agents, acting under color of state law, caused the deprivation of their constitutional rights. If we assume the truth of plaintiffs' adequately pleaded allegations, unknown members of the LAPD engaged in frequent low-altitude helicopter flights over their residence in order to inhibit Gibson's confrontational yet non-violent political activities. State action designed to retaliate against and chill political expression strikes at the heart of the First Amendment. Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); NAACP v. Alabama, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958); see also McKinley v. City of Eloy, 705 F.2d 1110, 1113 (9th Cir.1983), Davis v. Village Park II Realty Co., 578 F.2d 461, 463 (2nd Cir.1978). Accordingly, the victim of such action is entitled to sue the responsible state agents under section 1983. See Anderson v. Central Point School District, 746 F.2d 505 (9th Cir.1984) (coach suspended for corresponding directly with School Board on matters of public concern); McKinley, 705 F.2d at 1113 (probationary employee laid off for airing public criticism of city policies); see also Burnett v. Gratton, --- U.S. ----, 104 S.Ct. 2924, 82 L.Ed.2d 36 (1984) (assuming availability of section 1983 remedy for infringement of constitutionally protected speech); Mount Healthy City Board of Education v. Doyle, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) (same). Although plaintiffs may not recover merely on the basis of a speculative "chill" due to generalized and legitimate law enforcement initiatives, Laird v. Tatum, 408 U.S. 1, 92 S.Ct. 2318, 33 L.Ed.2d 154, reh'g denied 409 U.S. 901, 93 S.Ct. 94, 34 L.Ed.2d 165 (1972), they have alleged discrete acts of police surveillance and intimidation directed solely at silencing them. Hence, we conclude that they have stated a judicially cognizable claim of "specific ... objective harm" arising from the violation of their First Amendment rights. Id. at 14, 92 S.Ct. at 2326.
 
 
 6
 To identify those acts which remained actionable at the time plaintiffs tolled the statute of limitations on July 1, 1980, we must determine (1) the statute of limitations applicable to section 1983 claims arising in California at the time of this action and (2) the principles governing the accrual of actions alleging federal civil rights conspiracies. We conclude that plaintiffs have stated a claim that is not time barred based on the retaliatory helicopter overflights allegedly occurring after July 1, 1977.
 
 A. The applicable statute of limitations
 
 7
 The first question--the applicable statute of limitations--depends on the retroactivity of Wilson v. Garcia, --- U.S. ----, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). In Wilson, the Supreme Court held that section 1983 claims should be invariably characterized as personal injury actions for the purpose of identifying which state period of limitation should be borrowed under section 1988. The parties agree that after Wilson the statute of limitations for section 1983 actions brought in California will be one year. Until Wilson, this Circuit applied a longer three-year statute of limitations. Smith v. Cremins, 308 F.2d 187 (9th Cir.1962). Therefore, if Wilson retroactively governs plaintiffs' section 1983 claim, a significant portion of their complaint concededly timely when filed will be time-barred.
 
 
 8
 In Rivera v. Green, 775 F.2d 1381 (9th Cir.1985), this court granted Wilson retroactive application when it had the effect of lengthening, rather than abbreviating, the limitations period. The case before us is not controlled by Rivera, because Rivera expressly limited its holding to cases in which retroactive application "would advance the litigant's ability to pursue section 1983 remedies at the expense of a [disfavored] statute of limitations defense." Rivera at 1384. In this case, retroactive application would thwart, rather than enhance, the remedial purposes underlying section 1983. Thus, we undertake an independent retroactivity analysis on the facts of this case, and we conclude that, when retroactive application would shorten the statute of limitations, Wilson merits only prospective effect.[1] We thereby join the Tenth Circuit in rejecting retroactive application that would bar "plaintiffs' right to their day in court when their action was timely under the law in effect at the time their suit was commenced." Jackson v. City of Bloomfield, 731 F.2d 652, 655 (10th Cir.1984), (quoted with approval in Wilson, 105 S.Ct. at 1941 n. 10).
 
 
 9
 In Chevron Oil Co. v. Huson, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), the Supreme Court laid down three factors which courts must weigh in determining whether to apply a newly formulated rule of law retroactively. These factors are: "(1) whether the decision establishes a new principle of law; (2) whether retroactive application will further or retard the purposes of the rule in question; and (3) whether applying the new decision will produce substantial inequitable results." Barina v. Gulf Trading and Transp. Co., 726 F.2d 560, 563 (9th Cir.1984) (applying Chevron, 404 U.S. at 106-07, 92 S.Ct. at 355).
 
 
 10
 Before Wilson, this circuit had long held that the California three-year statute of limitations for actions "upon a liability created by statute", Cal.Civ.Proc.Code Sec. 338(1) (West 1982), governed all section 1983 claims brought in California. Bergschneider v. Denver, 446 F.2d 569, 570 (9th Cir.1971); Smith v. Cremins, 308 F.2d 187, 190 (9th Cir.1962). By directing courts to tie section 1983 actions to a different, shorter limitations provision, Wilson marks a clear break from settled circuit authority, potentially of great prejudice to litigants who relied upon the earlier rule. Consideration of the first Chevron factor thus militates against retroactivity. The second Chevron factor--whether retroactive application would advance or retard uniform federal characterization of section 1983 claims--does not counsel either way, because this circuit's clear, consistent enunciation of the previous rule served the chief policy goals articulated in Wilson: (1) safeguarding the rights of federal civil rights litigants; (2) achieving certainty; and (3) avoiding wasteful relitigation of collateral matters. The final Chevron factor weighs dispositively against retroactive application, for it would yield " 'substantial inequitable results' to hold that the respondent 'slept on his rights' at a time when he could not have known the time limitation that the law imposed upon him." Chevron, 404 U.S. at 108, 92 S.Ct. at 356 (citation omitted). The defendants are not prejudiced by enforcing the limitations rule prevailing at the time of their alleged wrongful acts. Accordingly, because the equities clearly favor the plaintiff, we hold under Chevron that Wilson should not be retroactively applied to oust claims that were timely when filed.
 
 
 11
 Because of our decision to enforce the three-year California limitations provision anticipated by the parties instead of the one-year provision prospectively required by Wilson, we hold that plaintiffs may recover for injury resulting from the city defendants' overt acts committed after July 1, 1977. The only allegation satisfying this limitation involves the pattern of retaliatory helicopter overflights. Accordingly, we affirm the dismissal of the section 1983 claim against the individual city defendants to the extent that it is based on activity preceding July 1, 1977, but reverse the dismissal of the section 1983 claim to the extent that it is based on occurrences after that date.
 
 
 12
 B. Accrual of federal civil rights conspiracies
 
 
 13
 In a misguided attempt to reach time-barred conduct, plaintiffs contend that California law should govern the accrual of their cause of action and that under California law a civil conspiracy in its entirety accrues only when the culminating act in furtherance of the conspiracy occurs. Under this theory, "the statute of limitations does not begin to run on any part of a plaintiff's claim until the 'last overt act' pursuant to the conspiracy has been completed." Wyatt v. Union Mortgage Co., 24 Cal.3d 773, 786, 598 P.2d 45, 53, 157 Cal.Rptr. 392, 400 (1979). Thus, because plaintiffs allege that the offensive helicopter surveillance marked only the latest manifestation of an ongoing civil conspiracy in which city agents participated, they assert their right to recover from these agents for civil rights violations preceding the limitations period, which would be inescapably time barred if sued on alone.
 
 
 14
 We reject plaintiffs' reliance on California authority because although state law prescribes the statute of limitation applicable to section 1983 claims, federal law governs the time of accrual. Venegas v. Wagner, 704 F.2d 1144, 1145 (9th Cir.1983); Gowin v. Altmiller, 663 F.2d 820, 822 (9th Cir.1981). The Ninth Circuit determines the accrual of civil conspiracies for limitations purposes in accordance with the last overt act doctrine. Venegas v. Wagner, 704 F.2d at 1146; Bergschneider v. Denver, 446 F.2d 569 (9th Cir.1971). Under this doctrine, "[i]njury and damage in a civil conspiracy action flow from the overt acts, not from 'the mere continuance of a conspiracy'." Kadar Corp. v. Milbury, 549 F.2d 230, 234 (1st Cir.1977) (quoting Hoffman v. Halden, 268 F.2d 280, 303 (9th Cir.1959). Consequently, the cause of action runs separately from each overt act that is alleged to cause damage to the plaintiff, Lawrence v. Acree, 665 F.2d 1319, 1324 (D.C.Cir.1981) (per curiam), and "[s]eparate conspiracies may not be characterized as a single grand conspiracy for procedural advantage." Fitzgerald v. Seamans, 553 F.2d 220, 230 (D.C.Cir.1977). Accordingly, plaintiffs may recover only for the overt acts, i.e., the helicopter overflights, that they specifically alleged to have occurred within the three-year limitations period. In re Multidistrict Vehicle Air Pollution, 591 F.2d 68, 71 (9th Cir.), cert. denied, 444 U.S. 900, 100 S.Ct. 210, 62 L.Ed.2d 136 (1979).
 
 
 15
 This circuit applies a rule of reason to civil rights actions challenged for sufficiency at the pleading stage. While "a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled," Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir.1982), plaintiff is not expected "to plead his evidence" or specific factual details not ascertainable in advance of discovery. Hoffman v. Halden, 268 F.2d 280, 294-95 (9th Cir.1959) (overruled on other grounds in Coben v. Norris, 300 F.2d 24, 30 (9th Cir.1962) (en banc)). Although the Second Amended Complaint is hardly a model of clarity, plaintiffs allege "specific, narrowly defined conduct" on the part of the city defendants, Kadar Corp. v. Millbury, 549 F.2d at 234, and ensuing damage to their rights. We hold, exclusively with respect to the overflights falling within the limitations period, that plaintiffs met their burden of pleading a civil rights violation cognizable under section 1983.[2]
 
 
 16
 III. Sec. 1985(3) CLAIMS AGAINST BOTH THE CITY AND FEDERAL DEFENDANTS
 
 
 17
 Plaintiffs also seek redress under 42 U.S.C. Sec. 1985(3) against both the federal and the city defendants. Section 1985(3) grants a federal cause of action for damages to anyone who is injured by a conspiracy formed "for the purpose of depriving [him], either directly or indirectly, of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. Sec. 1985(3) (1982). In Griffin v. Breckinridge, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), the Supreme Court held that this language reaches purely private conspiracies but requires "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." Id. at 102, 91 S.Ct. at 1798; see also Bretz v. Kelman, 773 F.2d 1026, 1027-28 (9th Cir.1985) (en banc); Gillepsie v. Civiletti, 629 F.2d 637, 641 (9th Cir.1980). The Supreme Court recently reaffirmed the specific intent requirement established in Griffin and, indeed, explicitly restricted the statutory coverage to conspiracies motivated by racial bias. United Brotherhood of Carpenters and Joiners of America, Local 610 AFL-CIO v. Scott, 463 U.S. 825, 834-35, 103 S.Ct. 3352, 3358-59, 77 L.Ed.2d 1049 (1983). Despite two separate opportunities to cure the deficiencies of their complaint, plaintiffs failed to allege that the law enforcement abuses they claim they suffered were on account of their race. Because we cannot "supply essential elements of the claim that were not initially pled," Ivey v. Board of Regents, 673 F.2d at 268, we affirm the dismissal of plaintiffs' section 1985(3) claim.
 
 
 18
 IV. BIVENS ACTION AGAINST THE FEDERAL DEFENDANTS
 
 
 19
 Plaintiffs allege that FBI agents and their surrogates, acting at FBI instigation, undertook to discourage Gibson's political activities through an array of undercover tactics, such as wiretapping her telephone, passing defamatory information to her employers, and seeking to entrap her in contraband drug transactions. These alleged tactics and maneuvers began with the gathering of a dossier of confidential information in the late 1960's and continued through the initiation of the present lawsuit. Thus, as with the previously analyzed section 1983 claims against the city defendants, we must decide the proper characterization of plaintiffs' claims against the federal defendants and the statute of limitations governing their claims.
 
 
 20
 Plaintiffs seek Bivens -type relief directly under the Constitution for the federal agents' asserted violation of their constitutional rights. Bivens actions, the judicially crafted counterpart to section 1983, enable victims of federal misconduct to sue the individual federal wrongdoers responsible for the transgression of their rights. Bivens v. Six Unknown Agents, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the pioneer case, created such a remedy for Fourth Amendment violations. Plaintiffs' allegations concerning the continual unauthorized interception of Gibson's phone calls fall directly within the coverage of Bivens. Other allegations, mainly relating to the campaign of harassment to disrupt Gibson's political activities, make out a claim under the First Amendment. While the Supreme Court has yet to extend Bivens to First Amendment violations, it has implied a cause of action under the Fifth Amendment, Davis v. Passman, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979), thus indicating that the Bivens remedy is not restricted to Fourth Amendment claims. Moreover, although this circuit has so far fallen just shy of explicitly authorizing Bivens claims based on the First Amendment, see Fonda v. Gray, 707 F.2d 435 (9th Cir.1983), other circuits have upheld such claims. See Dellums v. Powell, 566 F.2d 167, 194-95 (D.C.Cir.1977), cert. denied, 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161 (1978); Paton v. LaPrade, 524 F.2d 862, 869-71 (2d Cir.1975).[3] We now follow these circuits in holding that, because plaintiffs have alleged that FBI agents acted with the impermissible motive of curbing Gibson's protected speech, they have asserted a claim properly cognizable through a Bivens -type action directly under the First Amendment. See generally Angola v. Civiletti, 666 F.2d 1 (2d Cir.1981) (reversing dismissal of complaint which alleged that FBI persecuted plaintiff in violation of her First Amendment rights in order to coerce cooperation with pending investigation).
 
 
 21
 This circuit applies the catch-all four-year limitations provision set forth in section 343 of the California Code of Civil Procedure to Bivens actions arising in California. Marshall v. Kleppe, 637 F.2d 1217 (9th Cir.1980).[4] Applying this limitations provision to plaintiffs' Bivens claims[5], we hold that they have adequately stated a claim that may not be dismissed at the pleading stage as time-barred. Although a number of overt acts attributed to the federal defendants are no longer actionable, some of the alleged acts postdate July 1, 1976, and thus fall within the four-year limitations period. The acts that survive because they allegedly occurred after July 1, 1976, include the following: the alleged transmission of defamatory information to Gibson's superiors so as to induce the termination of her drug counseling job in 1977 and to stymie her opportunities for promotion at a similar post in 1979; the campaign of intimidation, burglary, and petty arson allegedly undertaken since 1980 to discourage pursuit of the present litigation; and the alleged installation of an illegal wiretap on Gibson's telephone in 1974, maintained and intermittently monitored until 1983. Accordingly, we reverse the dismissal of plaintiffs' Bivens claim under the First and Fourth Amendment to the extent it is based on activity after July 1, 1976.[6]
 
 
 22
 V. Sec. 1983 CLAIM AGAINST THE FEDERAL DEFENDANTS
 
 
 23
 Plaintiffs pleaded section 1983 as an alternative basis for obtaining relief from the unnamed federal defendants. However, section 1983 requires that the actionable conduct be under color of state law. Federal officers acting under federal authority are immune from suit under section 1983 unless the state or its agents significantly participated in the challenged activity. See Green v. Dumke, 480 F.2d 624, 629 (9th Cir.1973), Kletschka v. Driver, 411 F.2d 436, 448-49 (2d Cir.1969). Barring plaintiffs' vague and conclusory conspiracy allegations, the complaint fails to allege a single collusive act within the limitations period. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir.1982) ("Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss.") Accordingly, we affirm the dismissal of the section 1983 claim against the individual federal defendants.
 
 
 24
 VI. CLAIM AGAINST THE UNITED STATES UNDER THE FEDERAL TORT CLAIMS ACT
 
 
 25
 Plaintiffs allege that, as part of the conspiracy, FBI agents directed an agent provocateur named Darthard Perry to enter the Gibson garage surreptitiously, rummage through and remove sensitive documents belonging to Gibson and her political allies, and then burn the garage down to cover his traces. Perry allegedly executed the FBI plot in January, 1974, using a crude incendiary device later discovered by Los Angeles firefighters who put out the blaze. Plaintiffs also allege that, as a final tactic to camouflage federal complicity in the arson of Gibson's garage, unknown FBI agents filed a concocted account of the incident with the Los Angeles fire department, implying that the fire resulted from the negligence of neighborhood youth who frequented the garage to smoke marijuana cigarettes.
 
 
 26
 We have already held that Bivens claims based on activity preceding July 1, 1976, do not satisfy the applicable statute of limitations. However, plaintiffs also seek to recover damages directly from the United States under the Federal Tort Claims Act. Accordingly, we must consider whether plaintiffs' attempted compliance with the jurisdictional prerequisites of 28 U.S.C. Sec. 2401(b) and their argument that affirmative government deception tolled the limitations period allow them to take advantage of the limited waiver of sovereign immunity embodied in the FTCA.
 
 Section 2401(b) of Title 28 states that:
 
 27
 A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.
 
 
 28
 This section establishes two jurisdictional prerequisites: (1) timely notice of the claim filed with the responsible administrative agency; and (2) prompt prosecution of the claim once the agency notifies the claimant that it has denied administrative relief. See Dyniewicz v. United States, 742 F.2d 484, 485 (9th Cir.1984). The record below indicates that plaintiffs first filed an administrative claim with the FBI on March 31, 1979, seeking compensation for damage to the garage and to several items of furniture and memorabilia itemized in the claim, as well as for their consequent emotional distress. This claim also places the occurrence of the garage fire on January 5, 1974. Therefore, more than five years having passed between plaintiffs' injury and the filing of their administrative notice, their FTCA action is apparently disqualified under section 2401(b). Plaintiffs press two related yet distinct arguments for avoiding lapse of their claim: (1) the claim did not accrue until they discovered the government's complicity in the arson from conversations with an investigative journalist in April, 1977; and (2) running of the statute of limitations was tolled by the government's fraudulent concealment, again until they acquired independent knowledge of the facts in 1977. We consider these arguments in turn.A. Accrual of the FTCA claim
 
 
 29
 "Under federal law, a cause of action generally accrues when a plaintiff knows or has reason to know of the injury which is the basis of his action." Cline v. Brusett, 661 F.2d 108, 110 (9th Cir.1981); see also Pavlak v. Church, 727 F.2d 1425, 1428 (9th Cir.1984); Bireline v. Seagondollar, 567 F.2d 260, 263 (4th Cir.1977), cert. denied, 444 U.S. 842, 100 S.Ct. 83, 62 L.Ed.2d 54 (1979). In United States v. Kubrick, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979), the Supreme Court applied the discovery rule to a federal tort claim based on medical malpractice and assumed that plaintiff's cause of action did not accrue until he discovered both the existence of his injury and its cause. Conceding as much, Kubrick refused to extend the discovery rule further by making a precondition to accrual plaintiff's additional knowledge that the injury was negligently inflicted. As a result, this circuit has consistently cited Kubrick for the limited proposition that "under the FTCA, a claim accrues when the plaintiff knows of his injury and its cause." Washington v. United States, 769 F.2d 1436 (9th Cir.1985); see also In re Swine Flu Products Litigation, 764 F.2d 637 (9th Cir.1985).
 
 
 30
 Plaintiffs claim that their cause of action against the government did not begin to run until they discovered in 1977 that FBI agents hatched the plot to burn Gibson's garage. Nonetheless, the incident alone immediately alerted them to the fact of their injury, i.e., the destruction of Gibson's property, and its cause, fire. The information of which they were apprised in 1977 did not shed any new light on the damage caused by the fire or its origin. Rather, this information allegedly identified the culprit and the potential liability of the federal government. Accordingly, plaintiffs would have us stretch the boundaries of the Kubrick decision to delay accrual of a federal tort claim until plaintiff knows or has reason to know of the culpability of federal agents.
 
 
 31
 Language in Kubrick, emphasizing the strategic importance to the litigant of knowing whom to sue, supports plaintiffs' proposed construction. See 444 U.S. at 122, 100 S.Ct. at 359 ("the prospect is not so bleak for a plaintiff in possession of the critical facts that he has been hurt and who has inflicted the injury"). However, binding circuit precedent forecloses us from considering such an extension of Kubrick. In Dyniewicz v. United States, 742 F.2d 484 (9th Cir.1984), decedents' children discovered more than two years after a flash flood swept their parents' car off the road that national park rangers may have been responsible for the negligent road supervision that led to their parents' death. This court upheld the district judge's dismissal of the children's subsequent FTCA action on the ground that the administrative claim required for judicial relief was not timely filed. Distinguishing between the cause of injury and the party responsible for inflicting it, the court held that "[t]he 'cause' is known when the immediate physical cause of the injury is discovered." Id. at 486. The court reasoned that once plaintiffs knew "both the fact of injury and its immediate physical cause.... [their] cause of action accrued.... Their ignorance of the involvement of United States employees is irrelevant." Id. at 487. Likewise, in Davis v. United States, 642 F.2d 328 (9th Cir.1981), this court ruled that "[i]n the absence of fraudulent concealment it is plaintiff's burden, within the statutory period, to determine whether and whom to sue." Id. at 331. These precedents compel our holding that plaintiffs' federal tort claim accrued in 1974, when they learned of the property destruction caused by the fire.
 
 B. The fraudulent concealment issue
 
 32
 As a result, plaintiffs are left with their alternative fraudulent concealment argument. Plaintiffs contend that the spurious account filed under FBI auspices with the Los Angeles Fire Department fraudulently concealed the arson and thus, irrespective of the date of accrual, requires tolling the statute of limitations until they unmasked or through the exercise of due diligence could have unmasked the fraud. To make out a claim of fraudulent concealment, plaintiff "must plead with particularity the circumstances surrounding the concealment and state facts showing his due diligence in trying to uncover the facts." Rutledge v. Boston Woven Hose and Rubber Co., 576 F.2d 248, 250 (9th Cir.1978). Additionally, the plaintiff "must allege facts showing affirmative conduct upon the part of the defendant which would, under the circumstances of the case, lead a reasonable person to believe that he did not have a claim for relief." Id.; see also Conerly v. Westinghouse Electric Corp., 623 F.2d 117, 120 (9th Cir.1980).
 
 
 33
 We reject plaintiffs' fraudulent concealment claim for two reasons. First, plaintiffs could not reasonably have relied on the allegedly fraudulent representation: the fire marshal's discovery of an incendiary device immediately after the fire made it apparent to plaintiffs that the fire was not accidentally ignited by trespassing juveniles, particularly since Gibson alleged she knew that she always kept the garage door carefully locked. Second, plaintiffs failed to allege that they undertook diligent efforts within the limitations period to identify the source of the fire. See Rutledge, 576 F.2d at 250. As the Second Amended Complaint failed to allege the requisite elements of fraudulent concealment, we must rule that plaintiffs' FTCA claim ran without interruption from January, 1974, and was consequently time-barred when the administrative notice was filed in March, 1979--more than three years too late. Accordingly, we affirm the dismissal of the FTCA claim.
 
 CONCLUSION
 
 34
 We affirm the dismissal of plaintiffs' section 1983 claim against the City of Los Angeles, their section 1985(3) claim, their section 1983 claim against the unnamed federal defendants, and their FTCA claim. We reverse the dismissal of plaintiffs' section 1983 claim against the unnamed city defendants to the extent it is based on activity after July 1, 1977. Likewise, we reverse the dismissal of plaintiffs' Bivens claim against the unnamed federal defendants to the extent it is based on activity after July 1, 1976.
 
 
 35
 AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
 
 
 
 *
 The Honorable C.A. Muecke, U.S. District Judge for the District of Arizona, sitting by designation
 
 
 [1]
 Our result is consistent with a recent line of employee suits under Sec. 301 of the Labor Management Relations Act, 1947, in which this court determined the retroactivity of an unforeseen Supreme Court redefinition of the limitations period on an openly ad hoc basis, simply by gauging whether the effect in the given case was either to shorten or lengthen the governing period. Compare Glover v. United Grocers Inc., 746 F.2d 1380 (9th Cir.1984) (adopting six-month statute of limitations retroactively because it lengthened pre-existing period), cert. denied --- U.S. ----, 105 S.Ct. 2357, 86 L.Ed.2d 258 (1985), with Edwards v. Teamsters Local Union No. 36, 719 F.2d 1036 (9th Cir.1983), cert. denied, 465 U.S. 1102, 104 S.Ct. 1599, 80 L.Ed.2d 130 (1984) (declining retroactive application of a shorter statute of limitations)
 
 
 [2]
 The city defendants ask that we uphold the dismissal of the claims against the unnamed city agents on the ground that plaintiff's non-compliance with the prompt service required by Fed.R.Civ.P. 4(j) was unexcused. It is true that defendants should be dismissed in the absence of a showing of good cause if plaintiff fails to serve them within 120 days of the filing of the complaint. Fed.R.Civ.P. 4(j); see United States ex rel. DeLoss v. Kenner Gen. Contractors Inc., 764 F.2d 707 (9th Cir.1985) However, whether the plaintiffs had good cause for their delay in identifying and serving the individual wrongdoers is a factual issue, which must be decided in the first instance by the District Court. Id
 
 
 [3]
 Given the availability of Sec. 1983 relief against state agents who infringe First Amendment rights, see, e.g., McKinley v. City of Eloy, 705 F.2d 1110 (9th Cir.1983), it is hard to see why Bivens relief should not be available to redress equivalent violations perpetrated by federal agents. See Paton v. LaPrade, 524 F.2d at 870
 
 
 [4]
 Contrary to federal defendants' suggestion, we decline to disregard Marshall v. Kleppe as Ninth Circuit precedent on the ground that its analysis of the most fitting California provision to be borrowed for Bivens claims is inconsistent with Board of Regents v. Tomanio, 446 U.S. 478, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980). Tomanio instructed federal courts, when they borrow state-prescribed limitations provisions, to enforce coordinate tolling rules developed by the state so long as they are not inconsistent with federal policy. Marshall v. Kleppe does not rest on policy concerns repudiated by Tomanio. To the contrary, Marshall is consistent with Tomanio, for it identified and faithfully applied the most appropriate state limitations period for Bivens claims
 
 
 [5]
 The Supreme Court has yet to decide whether its reasoning in Wilson v. Garcia means that Bivens claims should also be analogized to state personal injury tort claims for limitations purposes. Recognizing that Wilson may require a re-examination of Marshall v. Kleppe, see LeVick v. Skaggs Companies, 701 F.2d 777 (9th Cir.1983) (panel may overrule controlling circuit precedent if it has been undermined by intervening Supreme Court decision), we do not find this an appropriate occasion for so doing: even were we to overrule Marshall, we would not apply a shorter statute of limitations retroactively to bar claims such as plaintiffs' that were timely when filed. See pages 1338 - 1340, supra
 
 
 [6]
 Because the allegations against the named FBI agents Will Heaton and Brandon Cleary concern conduct that allegedly transpired before July 1, 1976, our holding with respect to the limitations period for Bivens claims affirms the District Court's dismissal of these defendants from the suit