SUNBELT TELEVISION, INC., Plaintiff,

v.

JONES INTERCABLE, INC., Defendant.

No. CV 91–3506 WDK.

United States District Court,
C.D. California.

July 9, 1992.

Maxwell M. Blecher, Ann I. Jones, Blecher & Collins, P.D., Los Angeles, Cal., for plaintiff.

Jeffrey R. Pilkington, Davis, Graham & Stubbs, Denver, Colo., James I. Ham, Quinn, Kully & Morrow, Los Angeles, Cal., for defendant.

## REVISED ORDER: RE DEFENDANT'S MOTION TO DISMISS [1]

KELLER, District Judge.

## I. INTRODUCTION

Defendant Jones Intercable ("Jones") moves pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss the complaint filed by plaintiff Sunbelt Television Inc. ("Sunbelt"). Sunbelt operates a local full-power television broadcast station in the high desert area of Southern California which reaches approximately sixty-three communities. Jones manages a cable television system pursuant to non-exclusive franchises granted by local government bodies. This lawsuit arises from Jones' refusal to carry Sunbelt's television channel on its local cable network.

In its complaint, Sunbelt asserts three separate theories for a violation of Section 2 of the Sherman Act, 15 U.S.C. § 2: monopoly leveraging, denial of an essential facility, and attempted monopolization. Sunbelt also raises a state law claim for unfair competition. In moving to dismiss this action, Jones asserts that all of these theories, individually and collectively, fail to state a claim upon which relief can be granted. Jones also asserts that the First Amendment is a complete bar to this case since the entire premise of Sunbelt's complaint revolves around Jones' protected right to decide whether to include Sunbelt as part of its cable service.

For the reasons set forth below, defendant's motion to dismiss is DENIED except as to attempted monopolization and denial of an essential facility. As to those issues, plaintiff's claims are DISMISSED WITHOUT PREJUDICE and plaintiff is granted LEAVE TO AMEND.

---

1. This Order supersedes the Court's earlier Order entered on October 18, 1991.

## II. DISCUSSION

 In analyzing the sufficiency of a complaint under Fed.R.Civ.P. 12(b)(6), the Court must assume that all of the allegations, as pleaded, are true and correct. *See California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972); *Abramson v. Brownstein*, 897 F.2d 389, 391 (9th Cir.1990). Moreover, plaintiff's claims must be construed liberally, and, consequently, dismissal is improper unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Gibson v. United States*, 781 F.2d 1334, 1337 (9th Cir.1986), *cert. denied*, 479 U.S. 1054, 107 S.Ct. 928, 93 L.Ed.2d 979 (1987); *Western Concrete Structures Co. v. Mitsui & Co.*, 760 F.2d 1013, 1016 (9th Cir.), *cert. denied*, 474 U.S. 903, 106 S.Ct. 230, 88 L.Ed.2d 229 (1985).

A. *Defendant's First Amendment Defense.*

 Defendant asserts that the First Amendment is a complete bar to any antitrust claims brought against it since the sole basis of the complaint is defendant's alleged failure to carry Sunbelt's television station, KVVT, on defendant's cable television system. The freedom to make this decision, Jones contends, is a protected right under the First Amendment.

In making this argument, defendant asks this Court to draw an analogy between plaintiff's antitrust claims and the FCC's "must carry" rules—rules which, in the past, have been invalidated by the courts. *See, e.g., Century Communications Corp. v. FCC*, 835 F.2d 292, 293 (D.C.Cir.1987), *cert. denied*, 486 U.S. 1032, 108 S.Ct. 2015, 100 L.Ed.2d 602 (1988); *Quincy Cable T.V., Inc. v. FCC*, 768 F.2d 1434, 1452 (D.C.Cir.1985), *cert. denied*, 476 U.S. 1169, 106 S.Ct. 2889, 90 L.Ed.2d 977 (1986). Stated more directly, defendant asserts that forcing its cable system to carry plaintiff's

channel is indistinguishable from a "must carry" order formulated by the FCC—and is therefore invalid under *Century* and *Quincy*. This Court's reading of the applicable case law leads it to the opposite conclusion.

Significantly, none of the cases cited by defendant invalidate "must carry" rules *per se. See. Century*, 835 F.2d at 295; *Quincy*, 768 F.2d at 1463. Instead, the courts have stated that the FCC has yet to adopt a set of "must carry" regulations that satisfy the test set forth by the Supreme Court in *United States v. O'Brien*, 391 U.S. 367, 377, 88 S.Ct. 1673, 1679, 20 L.Ed.2d 672 (1968). *Century*, 835 F.2d at 298.[2] Thus, if the interest to be protected is substantial, if it is unrelated to the suppression of free expression, and the means employed are the least restrictive possible, a "must carry" rule would not be Constitutionally infirm. *Id.* Accordingly, the "must carry" decisions to which defendant refers do not provide the type of blanket protection which defendant seeks: government statutes that affect program selection, be they FCC "must carry" rules or the Sherman Antitrust Act, are not necessarily Constitutionally infirm.

 Moreover, and more importantly, the Supreme Court has consistently ruled that media antitrust defendants are not immune from suit if their program selections are guided by anti-competitive motives:

> The publisher claims a right as a private business concern to select its customers and to refuse to accept advertisements from whomever it pleases. We do not dispute that general right. [However] [t]he right claimed by the publisher is neither absolute nor exempt from regulation. Its exercise as a purposeful means of monopolizing interstate commerce is prohibited by the Sherman Act.

**2.** In *O'Brien*, the Supreme Court stated that: [W]e think it clear that a government regulation is sufficiently justified if it is within the constitutional power of the government; if it furthers an important or substantial government interest; if the governmental interest is

unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.
*O'Brien*, 391 U.S. at 377, 88 S.Ct. at 1679.

*Lorain Journal v. United States,* 342 U.S. 143, 155, 72 S.Ct. 181, 187, 96 L.Ed. 162 (1951) (upholding injunction and rejecting First Amendment defense); *see also Aspen Skiing Co. v. Aspen Highlands Skiing Corp.,* 472 U.S. 585, 602, 105 S.Ct. 2847, 2857, 86 L.Ed.2d 467 (1985) (reaffirming doctrine). Thus, while the First Amendment will shield legitimate selection decisions, it will not protect predatory conduct. *Id.*

In addition to being binding precedent, this Court finds the undergirding rationale of *Lorain Journal* compelling: while the broad discretion granted by the First Amendment is to be respected, it does not provide a cloak for activities whose primary motivation is the destruction of the competitive marketplace. Indeed, if one of the central rationales behind the First Amendment is the broadest possible dissemination of ideas and information—and it is—it would be antithetical for the courts to sanction monopolistic conduct in the name of the First Amendment.

At best, defendant can argue that the Supreme Court decision in *Lorain Journal* was rendered prior to the test enunciated in *O'Brien.* Even applying the four-part test set forth in *O'Brien,* however, the Sherman Antitrust Act is consistent with the protections of the First Amendment: it is clearly within the constitutional power of the government; it furthers several important government interests; and it is unrelated to the suppression of free expression. Finally, and most importantly, the Sherman Act's incidental restriction on free speech is no greater than is essential to protect the competitive marketplace: the Sherman Act can only be invoked, and the First Amendment implicated, when the marketplace is threatened. Put another way, the Sherman Act interferes only with those decision-makers who themselves seek to muzzle the marketplace of ideas. It is difficult to see any way, nor has defendant proffered one, in which the Sherman Act could be more narrowly tailored to accomplish this goal. As such, even under *O'Brien,* the First Amendment will not safeguard, nor should it, anti-competitive program decisions.

Here, plaintiff has alleged that the basis for defendants' conduct was its desire to restrain, inhibit and handicap competition. Given that this Court must view the allegations of the complaint as true, plaintiff has properly plead an antitrust violation which is not shielded by the First Amendment. Accordingly, this Court—like the Supreme Court in *Lorain Journal*—rejects Jones' First Amendment defense.

**B.** *Plaintiff's Monopolization Claim.*

■ To establish monopolization under Section 2 of the Sherman Act, a plaintiff must prove: (1) possession of monopoly power in the relevant market; (2) willful acquisition or maintenance of that power; and (3) causal antitrust injury. *See Syufy Enterprises v. American Multicinema, Inc.,* 793 F.2d 990, 993 (9th Cir.1986), *cert. denied,* 479 U.S. 1031, 107 S.Ct. 876, 93 L.Ed.2d 830 (1987); *Transamerica Computer Co. v. IBM Corp.,* 698 F.2d 1377, 1382 (9th Cir.), *cert. denied,* 464 U.S. 955, 104 S.Ct. 370, 78 L.Ed.2d 329 (1983).

■ Here, Sunbelt asserts that Jones has acquired monopoly power in the provision of television station services in the Palmdale/Lancaster area by virtue of the fact that it has 100% control of the local cable system market and the terrain, topography, and relevant municipal regulations substantially interfere with commercial television reception. Put simply, consumers must choose between cable or static. These allegations adequately plead the first prong of a Sherman antitrust violation.

Sunbelt next asserts that Jones has willfully maintained that power by refusing to allow plaintiff to broadcast on its cable system. For a pure monopolization claim, however, this allegation is not enough. That is, there is no indication from the complaint that the barriers to entry in the local cable television market are such that neither plaintiff nor another cable company cannot market its own cable services (i.e. that defendant can maintain its monopoly power). *See United States v. Syufy Enterprises,* 903 F.2d 659, 666–67 (9th Cir. 1990) (stating that where there are no

structural barriers to entry, monopoly power—even if present—cannot be viewed as maintainable). The critical issue here, therefore, centers around plaintiff's allegations of "monopoly leveraging" and "denial of an essential facility," two sub-theories of Sherman Act liability.

### 1. Monopoly Leveraging.

■ Monopoly leveraging theory states that a defendant violates the antitrust laws when it leverages its monopoly position in one market to influence another, competitive, arena. *See Syufy Enterprises,* 793 F.2d at 997; *United States v. Griffith,* 334 U.S. 100, 103–04, 68 S.Ct. 941, 943–44, 92 L.Ed. 1236 (1948). Although previously an open question, the Ninth Circuit has recently rejected monopoly leveraging as a theory of Section 2 liability separate from monopolization or attempted monopolization. *Alaska Airlines v. United Airlines,* 948 F.2d 536, 549 (9th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1603, 118 L.Ed.2d 316 (1992). This Court must do so also. Accordingly, defendant's motion as to this issue is GRANTED and this claim is DISMISSED WITH PREJUDICE.

### 2. Denial of an Essential Facility.

■ The essential facility doctrine imposes a duty on the owner of a facility that cannot reasonably be duplicated and which is essential to competition in a given market to make that facility available on a nondiscriminatory basis. In order to prevail on such a claim, plaintiffs must establish that: (1) the defendant is a monopolist in control of the essential facility; (2) competitors of the monopolist are unable to duplicate the facility; (3) the monopolist has refused to provide the competitors access to the facility; and (4) it is feasible for the monopolist to do so. *City of Anaheim v. Southern Cal. Edison Co.,* 955 F.2d 1373, 1380 (9th Cir.1992); *Alaska Airlines,* 948 F.2d at 545–46.

■ Here, Sunbelt's complaint fails to assert that Jones' cable service is an essential facility as that term has been used in antitrust actions, nor will this Court imply it. Specifically, the complaint fails to assert that Jones' cable facilities cannot reasonably be duplicated by plaintiff or some other competitor. *See Ferguson v. Greater Pocatello Chamber of Commerce,* 848 F.2d 976, 983 (9th Cir.1988). As such, the complaint fails to state a Sherman Act violation under the essential facility theory. However, it appears that this deficiency can be remedied—at least at the pleading stage—and therefore plaintiff is granted leave to amend for this purpose.

In sum, at least one of plaintiff's proffered monopolization theories is well-pleaded. Accordingly, defendant's motion to dismiss as to this issue is DENIED. As to the essential facility theory, defendant's motion is GRANTED and this claim is DISMISSED WITHOUT PREJUDICE. Plaintiff is granted leave to amend for this purpose.

### C. *Plaintiff's Attempted Monopolization Claim.*

■ Plaintiff's next theory under section 2 of the Sherman Act is attempted monopolization. *See* 15 U.S.C. § 2. To adequately plead a claim for attempted monopolization, a plaintiff must assert the following elements: (1) specific intent to monopolize; (2) predatory or anti-competitive conduct; and (3) a dangerous probability of success. *Catlin v. Washington Energy Co.,* 791 F.2d 1343, 1348 (9th Cir. 1986).

■ Here, Sunbelt has sufficiently alleged all of these elements, albeit they are buried in the midst of Sunbelt's other theories under Section 2 of the Sherman Act. However, it is unclear from the face of the complaint what market defendant is allegedly attempting to monopolize. That is, plaintiff has not specified whether defendants are attempting to monopolize the cable television services market or the "downstream" market of television station services. To the extent that plaintiff seeks to state a separate cause of action for attempting to monopolize the television station services market in the Palmdale/Lancaster area, plaintiff is granted leave to amend. Accordingly, defendant's motion to dismiss as to this issue is GRANTED.

This claim is DISMISSED WITHOUT PREJUDICE and plaintiff is granted leave to amend.

### D. *Plaintiff's Unfair Competition Claim.*

California Bus. & Prof.Code § 17200 defines unfair competition as any "unlawful, unfair, or fraudulent business practice and unfair, deceptive, untrue or misleading advertising." California courts have traditionally adopted an expansive view of this language, even stating that unfair conduct is that which "offends an established public policy *or* when the practice is immoral, unethical, oppressive, unscrupulous *or* substantially injurious to consumers." *People v. Casa Blanca Convalescent Homes, Inc.*, 159 Cal.App.3d 509, 530, 206 Cal.Rptr. 164, 177 (1984) (emphasis added).

Here, since plaintiff's have adequately plead a violation of the Sherman Act, they have clearly stated a cause of action under California's Unfair Competition law. *See People v. Cappuccio, Inc.*, 204 Cal.App.3d 750, 760 (1988) (noting that behavior which violates fundamental rules of honesty and fair dealing is actionable); *People v. E.W.A.P., Inc.*, 106 Cal.App.3d 315, 320 (1980) (declaring that statute makes any business practice prohibited by law actionable). Accordingly, defendant's motion as to this issue is DENIED.

### IV. CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is DENIED as to all theories except denial of an essential facility and attempted monopolization. As to those issues, plaintiff's claims are dismissed WITHOUT PREJUDICE and plaintiff is granted leave to amend.

IT IS SO ORDERED.