**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

PAMELA S. HENSLEY; MICHAEL M.
HENSLEY, husband and wife each
of them and their marital
community thereof,
            *Plaintiffs-Appellees,*

            v.

UNITED STATES OF AMERICA, as
substituted party for Edward and
Jane Doe Eich,
            *Defendant-Appellant.*

No. 06-35619

D.C. No.
CV-04-00302-MJP

OPINION

Appeal from the United States District Court
for the Western District of Washington
Marsha J. Pechman, District Judge, Presiding

Argued and Submitted
May 8, 2008—Seattle, Washington

Filed July 9, 2008

Before: Susan P. Graber and Johnnie B. Rawlinson,
Circuit Judges, and Otis D. Wright II,* District Judge.

Opinion by Judge Graber

*The Honorable Otis D. Wright II, United States District Judge for the
Central District of California, sitting by designation.

**COUNSEL**

William G. Cole, Attorney, Civil Division, U.S. Department of Justice, Washington, D.C., for the defendant-appellant.

Howard M. Goodfriend, Edwards, Sieh, Smith & Goodfriend, P.S., Seattle, Washington; Lincoln D. Sieler, Mosler, Schermer, Wallstrom, Jacobs & Sieler, Seattle, Washington, for the plaintiffs-appellees.

## OPINION

GRABER, Circuit Judge:

In this negligence action arising from a car accident, we are called upon to decide when the plaintiffs' claim accrued for purposes of measuring the two-year statute of limitations under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2401, 2671-2680. As required by binding precedent, we hold that the claim accrued at the time of the collision and not later when the Attorney General certified that the driver of the other vehicle was acting within the scope of his federal employment at the time of the collision. Accordingly, we reverse the judgment in favor of the plaintiffs and remand with instructions to dismiss the action.

### FACTUAL AND PROCEDURAL HISTORY

On November 6, 2000, a car driven by Ensign Edward C. Eich, an active duty commissioned officer in the United States Navy Reserve, struck from behind a car driven by Pamela Hensley, the wife of an active duty Chief Petty Officer in the United States Navy. Mrs. Hensley suffered serious injuries as a result of the collision.

The collision occurred on the grounds of the Whidbey Island Naval Air Station. Although Eich was driving his personal vehicle, he was wearing his Navy uniform at the time of the crash. Mrs. Hensley saw that Eich was in uniform and testified that she knew from seeing the uniform that he was a Navy officer. Military police were called to the scene. An ambulance took Mrs. Hensley to a Navy hospital, where she received treatment.

The military police promptly prepared an incident report. It included the information that Eich was employed as a Navy officer. Mrs. Hensley did not receive a copy of that report. Instead, while at the hospital, she received a "Vehicle Infor-

mation Exchange Sheet" containing Eich's name and address, along with information about his personal insurance carrier, United Services Automobile Association ("USAA"). That sheet did not identify Eich as a member of the military. A military police officer who visited Mrs. Hensley at the hospital advised her to follow up with Eich's insurance company.

During the next two years, Mrs. Hensley contacted USAA many times. According to her declaration, USAA told her that she had three years under Washington law to file suit if settlement negotiations proved unproductive.

Mrs. Hensley did not hire a lawyer until August 2003, nearly three years after the accident. Counsel pursued further discussions with USAA. When negotiations failed, the Hensleys filed suit against Eich and his wife in Washington state court on October 24, 2003—less than three years, but more than two years, after the accident.

That action was removed to federal court in early 2004. Following certification that Eich was acting within the scope of his federal employment at the time of the accident, the United States substituted itself for the Eichs pursuant to 28 U.S.C. § 2679(d)(1). The United States also moved to dismiss the Hensleys' complaint for lack of subject matter jurisdiction.[1] Among other reasons,[2] the government cited the FTCA's two-

---

[1]Before the district court ruled on the government's motion to dismiss, the Hensleys amended their complaint to add claims against USAA for negligent misrepresentation regarding the applicable statute of limitations. On stipulation of the parties, the claims against USAA were dismissed with prejudice, before trial, leaving only the United States as a defendant.

[2]The Hensleys did not file an administrative claim before filing suit, as required by 28 U.S.C. § 2675(a). Because we dispose of the case on statute of limitations grounds, we need not reach the interpretive questions that the parties raise concerning the revisions of the Federal Employees Liability Reform and Tort Compensation Act of 1988 (the "Westfall Act"), Pub. L. No. 100-964, §§ 5-6, 102 Stat. 4563, 4564-65 (1988), to 28 U.S.C. § 2679(d)(5), providing that an action that is removed to federal court generally is considered timely if the administrative claim would have been timely had the claim been filed on the date of commencement of the state action.

year statute of limitations, 28 U.S.C. § 2401(b). In response, the Hensleys argued that the statute of limitations should be equitably tolled because Mrs. Hensley had no reason to think that Eich was acting within the scope of his employment, a military police officer suggested that she contact Eich's private insurance carrier, and USAA representatives assured her that her claim would be settled after she provided more information.

The district court ruled that the Hensleys' suit was timely: "[I]f a civil action is instituted within the applicable state limitations period, an FTCA claim does not accrue for limitations purposes until the plaintiff knows or should have known that the alleged tortfeasor was acting within the scope of federal employment . . . ." With respect to the Hensleys' alternative equitable tolling argument, the district court observed that this "is not an equitable tolling case."

Following a bench trial, the district court found that Eich had operated his car negligently. The court thus ruled in favor of the Hensleys and awarded them more than $1.5 million. The government timely appealed from the resulting judgment.

## STANDARDS OF REVIEW

We review de novo a district court's interpretation of the statute of limitations under the FTCA, *Lehman v. United States*, 154 F.3d 1010, 1013 (9th Cir. 1998), and its decision as to whether a statute of limitations bars a claim, *Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1175 (9th Cir. 2000). The district court's decision regarding equitable tolling is "generally reviewed for an abuse of discretion, unless the facts are undisputed, in which event the legal question is reviewed de novo." *Id.*

## DISCUSSION

A. *The Hensleys' Claim Accrued at the Time of the Car Accident.*

[1] The FTCA waives sovereign immunity for claims against the federal government arising from torts committed by federal employees who are acting within the scope of their employment. 28 U.S.C. §§ 1346(b)(1), 2679(d)(1). But the statute provides that a tort claim "shall be forever barred" unless it is presented "within two years after such claim accrues." *Id.* § 2401(b). As a general rule, a claim accrues "when a plaintiff knows or has reason to know of the injury which is the basis of his action." *Gibson v. United States*, 781 F.2d 1334, 1344 (9th Cir. 1986) (internal quotation marks omitted). In addition, as a general rule, ignorance of the involvement of government employees is irrelevant to accrual of a federal tort claim. *Dyniewicz v. United States*, 742 F.2d 484, 487 (9th Cir. 1984).

[2] In certain circumstances, such as claims involving medical malpractice, accrual does not occur until a plaintiff knows of both the existence of an injury and its cause. *United States v. Kubrick*, 444 U.S. 111, 122-23 (1979). But accrual does not await a plaintiff's awareness, whether actual or constructive, of the government's negligence. *Id.* at 125. As the Court explained:

> A plaintiff . . . , armed with the facts about the harm done to him, can protect himself by seeking advice in the medical and legal community. To excuse him from promptly doing so by postponing the accrual of his claim would undermine the purpose of the limitations statute, which is to require the reasonably diligent presentation of tort claims against the Government.

*Id.* at 123.

In *Gibson*, we expressly refused to expand the Supreme Court's holding in *Kubrick* "to delay accrual of a federal tort claim until plaintiff knows or has reason to know of the culpability of federal agents." 781 F.2d at 1344. There, the plaintiffs alleged that government agents were responsible for burning down their garage. They argued that their claim did not accrue for the purpose of the statute of limitations until more than three years after the fire, when they finally learned of the government's alleged complicity in the arson. *Id.* at 1343-44. Although we recognized that the plaintiffs could find some support in the "[l]anguage in *Kubrick*[ ] emphasizing the strategic importance to the litigant of knowing whom to sue," *Dyniewicz* required us to hold that the claim accrued when the plaintiffs learned of the property damage itself. *Id.* at 1344.

*Dyniewicz*, on which we relied in *Gibson*, is factually similar to the present case. The plaintiffs filed a wrongful death claim against the State of Hawaii for the deaths of a husband and wife who had died in a flood. *Dyniewicz*, 742 F.2d at 485. While that timely state court action was ongoing, but approximately two years and three months after the deaths, the plaintiffs learned that National Park Service rangers might have played a part in causing the deaths. *Id.* The plaintiffs promptly filed an administrative claim, asserting a cause of action under the FTCA. We held that the claim was time-barred because it was not submitted within two years of the date of its accrual. *Id.* at 486.

**[3]** We reiterated the rule that the claim accrued when the plaintiffs "knew both the fact of injury and its immediate physical cause." *Id.* at 487. The plaintiffs' "ignorance of the involvement of United States employees is irrelevant" to determining when their claim accrues. *Id.*; *accord Gould v. U.S. Dep't of Health & Human Servs.*, 905 F.2d 738, 743 n.2, 745 (4th Cir. 1990) (en banc) (discussing *Dyniewicz* and holding that the FTCA statute of limitations "does not wait until a plaintiff is aware that an alleged tort-feasor is a federal

employee"); *Zeleznik v. United States*, 770 F.2d 20, 23 (3rd Cir. 1985) (following *Dyniewicz* and holding that accrual of an FTCA claim is not delayed until the injured party learns of possible government liability); *Steele v. United States*, 599 F.2d 823, 827-28 (7th Cir. 1979) (holding that the plaintiff's assertion that "he neither knew, nor in the exercise of reasonable diligence could have known" about the government's possible liability for his injury was irrelevant to accrual of his FTCA claim). Moreover, we held that even the government's silence concerning the possible negligence of the rangers did not toll the statute of limitations in the absence of fraudulent concealment. *Dyniewicz*, 742 F.2d at 487; *see also Davis v. United States*, 642 F.2d 328, 331 (9th Cir. 1981) ("In the absence of fraudulent concealment it is plaintiff's burden, within the statutory period, to determine whether and whom to sue.").

**[4]** At the moment Eich struck Mrs. Hensley's car with his own, the Hensleys knew both the fact of the injury and its immediate physical cause. *Dyniewicz*, 742 F.2d at 487. The fact that Mrs. Hensley suffered an injury was immediately apparent; the cause (a collision) was immediately apparent; and even the identity of the person who inflicted the injury (Eich) was immediately apparent. Therefore, the Hensleys' claim accrued at the time of the accident. That being so, their suit was untimely under 28 U.S.C. § 2401(b) because it was filed more than two years later. In the absence of an equitable remedy, the district court lacked jurisdiction.

The relevant precedents provide no support for the district court's compassionate holding that accrual of the Hensleys' claim awaited the moment when they knew or should have known that Eich was acting within the scope of his federal employment. *See Dyniewicz*, 742 F.2d at 487 ("[I]gnorance of the involvement of United States employees is irrelevant."). As the Supreme Court emphasized in *Kubrick*, 444 U.S. at 123, armed as they were with the available facts, the Hensleys

could have protected their FTCA claim by seeking legal advice sooner.

B. *The Doctrine of Equitable Tolling Does Not Help the Hensleys*.

**[5]** "Equitable tolling focuses primarily on the plaintiff's excusable ignorance of the limitations period." *Lehman*, 154 F.3d at 1016 (emphasis omitted). The doctrine applies "in situations where, despite all due diligence, [the party invoking equitable tolling] is unable to obtain vital information bearing on the existence of the claim," *Socop-Gonzalez v. INS*, 272 F.3d 1176, 1193 (9th Cir. 2001) (en banc) (alteration in original) (internal quotation marks omitted), or where the party invoking the doctrine "has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass," *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990); *see also Dyniewicz*, 742 F.2d at 487 (stating that equitable tolling would not apply in the absence of "fraudulent concealment" of information). The doctrine "is not available to avoid the consequence of one's own negligence," *Lehman*, 154 F.3d at 1016, and does not apply "when a late filing is due to claimant's failure 'to exercise due diligence in preserving his legal rights,' " *Scholar v. Pac. Bell*, 963 F.2d 264, 268 (9th Cir. 1992) (quoting *Irwin*, 498 U.S. at 96)). Because the relevant facts are undisputed, we consider the Hensleys' equitable tolling argument de novo, *Santa Maria*, 202 F.3d at 1175, and agree with the district court that "this is not an equitable tolling case."

The Hensleys make three arguments for application of the equitable tolling doctrine, but we find none persuasive. First, they point out that a military police officer told Mrs. Hensley that she should follow up with Eich's insurance carrier and that military police failed to supply a copy of their report or any other document identifying Eich as an active duty member of the military. But Mrs. Hensley knew that Eich was on a military base and in uniform at the time of the crash, she

knew that military police responded to the incident, and she knew that she was taken to a military hospital for treatment of her injuries—facts that gave the Hensleys good reason to investigate whether Eich was acting within the scope of his employment at the time of the accident. Second, the Hensleys argue that USAA representatives affirmatively misled them into thinking that they had a claim against Eich only in his personal capacity. But USAA was not acting on behalf of, nor was it capable of binding, the government, and there is no evidence that USAA was attempting to induce the Hensleys to allow the FTCA statute of limitations to expire. Third, the Hensleys suggest that the government's belated certification was calculated to preclude a timely tort claim. But *the Hensleys* controlled the timing of the government's certification; nothing put the government on notice of their claim until the Hensleys filed suit in state court nearly three years after the accident. *See* 28 U.S.C. § 2679(c) (providing for a government employee against whom a civil action is commenced to deliver copies of the pleadings and process to a designated supervisor who, in turn, shall forward the documents to the relevant United States Attorney).

**[6]** In short, the Hensleys did not exercise due diligence to investigate Eich's status at the time of the accident, and the government did not engage in any fraudulent concealment, misconduct, or trickery that would have lulled the Hensleys into letting their rights lapse. The burden was on them to determine whether and whom to sue, within the applicable statute of limitations. *Gibson*, 781 F.2d at 1344.

## CONCLUSION

As the Supreme Court has succinctly stated, "[i]t goes without saying that statutes of limitations often make it impossible to enforce what were otherwise perfectly valid claims. But that is their very purpose, and they remain as ubiquitous as the statutory rights or other rights to which they are attached or are applicable." *Kubrick*, 444 U.S. at 125. Regrettably, this is

one of those unhappy cases in which a statute of limitations makes it impossible to enforce what was otherwise a valid claim.

REVERSED and REMANDED with instructions to dismiss the action.