**SORANNO'S GASCO, INCORPORATED, a California corporation; Leonard Soranno; Diana Soranno, Husband and Wife, Plaintiffs–Appellants,**

v.

**Wayne MORGAN, individually; Mike Taulier, individually; Gordon M. Dewers, individually and each in their official capacities as officers of the County of Stanislaus, Stanislaus County Air Pollution Control District, Defendants–Appellees.**

No. 87–2249.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 12, 1988.

Decided May 15, 1989.

Paul M. Ostroff, Los Angeles, Cal., for plaintiffs-appellants.

David M. Jamieson, Cardozo, Nickerson, Martelli, Curtis & Arata, Modesto, Cal., for defendants-appellees.

Before FLETCHER, BEEZER and O'SCANNLAIN, Circuit Judges.

FLETCHER, Circuit Judge:

Plaintiffs Soranno's Gasco, Incorporated, and Leonard and Dianna Soranno brought this action under 42 U.S.C. § 1983 against the County of Stanislaus and its Air Pollution Control District, Air Pollution Control Officer Gordon Dewers, Deputy Air Pollution Control Officer Wayne Morgan and Air Pollution Control Specialist Mike Taulier. The plaintiffs contend that the defendants suspended Gasco's petroleum bulk plant permits and discouraged its customers from doing business with Gasco in retaliation for Mr. Soranno's exercise of constitutionally protected rights and in violation of due process. The district court granted the defendants' motion for summary judgment, holding that the plaintiffs failed to establish that they were deprived of a protected interest, and that even if such a deprivation occurred, available post-deprivation remedies were sufficient to comport with due process. The plaintiffs timely appeal. We affirm in part, reverse in part and remand.

## I.

## FACTS

Leonard and Dianna Soranno, husband and wife, are the officers and sole shareholders of Soranno's Gasco, Incorporated ("Gasco"). Gasco is engaged in the business of selling and distributing petroleum products in central California. Gasco owns two petroleum bulk plants in Ceres, California which are operated under permits issued by the County of Stanislaus and the Stanislaus County Air Pollution Control District ("APCD"). Gasco has over three hundred wholesale, commercial and industrial bulk customers. Gasco also owns a chain of twelve retail gasoline stations.

Beginning in 1979, the APCD and the County promulgated regulations pertaining to the use of vapor recovery devices. These devices are designed to reduce the escape of hydrocarbon vapors into the atmosphere. Under the regulations, Gasco was required to install vapor recovery devices at its bulk plants and its retail stations.

Mr. Soranno publicly criticized the APCD and the County with respect to various aspects of the vapor recovery regulations. His actions included the institution of public hearings before the County Board of Supervisors to protest certain exemptions from the regulations granted to some local businesses. Soranno also initiated litigation challenging the vapor recovery regulations, and exemptions granted under them.

In September of 1983, the APCD requested that Gasco and Soranno furnish information concerning "bob-tail," or partial load, delivery by Gasco during 1982. This request was refused on the basis that it was an improper attempt to subvert the discovery processes available in an ongoing civil proceeding.[1]

On December 2, 1983, the APCD again demanded the "bob-tail" information, and advised Soranno that if he did not comply, his bulk plant permits would be suspended. On December 14, 1983, the APCD suspended the permits under the authority of California Health & Safety Code §§ 42303 and 42304.[2]

---

1. In March of 1983, the Stanislaus County District Attorney's Office filed an action in state court seeking civil penalties against Gasco. The suit alleged, *inter alia,* that Gasco violated APCD rules by failing to provide information regarding operation of Gasco's bulk plants in 1982. According to an affidavit filed by Gasco corporate counsel Walter J. Schmidt, the information requested by the APCD in September of 1983 was inappropriate outside of discovery to be conducted in the state civil suit.

2. Section 42303 provides:

An air pollution control officer, at any time, may require from an applicant for, or the holder of, any permit provided for by the regulations of the district board, such information, analyses, plans, or specifications which will dis-

On December 29, 1983, defendant Morgan directed defendant Taulier to send a letter to Gasco's customers informing them that Gasco's bulk plant permits were suspended and that Gasco could not lawfully deliver gasoline while under suspension. The letter also informed them that their own permits might be subject to suspension if they continued to receive gasoline from Gasco. Plaintiffs contend that these letters were false because Gasco could still lawfully deliver gasoline to its customers. Plaintiffs also contend that Gasco lost business as a result of the December 29 notices.

On December 29, the same day that the customer notices were mailed, Gasco's counsel informed Morgan and Taulier that he would provide the "bob-tail" information requested on December 2. Approximately fifteen days later, the APCD reinstated the bulk plant permits.

The Sorannos, individually and on behalf of Gasco, filed this action on December 30, 1983. They allege that the defendants, acting under color of state law, deprived them of various constitutional rights by suspending their bulk plant permits and notifying their customers of the suspension. The plaintiffs advance two theories. First, they contend that the defendants' acts deprived them of property and liberty without due process. Second, the plaintiffs contend that the defendants' acts were motivated by a desire to retaliate against Soranno for the constitutionally protected acts of publicly criticizing the defendants and initiating litigation against them. The plaintiffs seek damages for loss of business profits, and for mental and emotional distress caused by defendants' conduct, as well as an injunction against further violation of their constitutional rights.

On September 12, 1986, the defendants filed a motion for summary judgment. Argument on the motions was held on October 20, 1986. On May 5, 1987, the district court issued an order granting summary judgment in favor of the defendants. The district court held that Gasco had no protected property interest in preservation of the bulk plant permits. The court also concluded that the alleged injury to the Sorannos' business reputation was not a constitutionally protected liberty interest. Thus, it found no constitutional deprivation to give rise to section 1983 liability.

Alternatively, the district court held that, assuming plaintiffs had been deprived of a constitutionally protected interest, available post-deprivation remedies, including reinstatement of the permit and review of the suspension decision, were sufficient to comport with due process. The plaintiffs timely appeal. We have jurisdiction under 28 U.S.C. § 1291.

## II.

### STANDARD OF REVIEW

We review *de novo* a district court's grant of summary judgment. *Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989). We view the evidence in the light most favorable to the non-moving party; we may affirm only if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id.* We may affirm a grant of summary judgment on any ground supported by the record before the district court at the time of the ruling. *Jewel Cos. v. Pay Less Drug Stores Northwest, Inc.*, 741 F.2d 1555, 1564–65 (9th Cir.1984).

## III.

### DISCUSSION

#### A. *The Retaliation Claim*

"To make out a cause of action under section 1983, plaintiffs must plead that (1)

close the nature, extent, quantity, or degree of air contaminants which are, or may be, discharged by the source for which the permit was issued or applied. Cal. Health & Safety Code § 42303 (West 1986).
Section 42304 provides:
   If, within a reasonable time, the holder of any permit issued by a district board willfully fails and refuses to furnish the information, analyses, plans, or specifications requested by the district air pollution control officer, such officer may suspend the permit. Such officer shall serve notice in writing of such suspension and the reasons therefor on the permitee. Cal. Health & Safety Code § 42304 (West 1986).

the defendants acting under color of state law (2) deprived plaintiffs of rights secured by the Constitution or federal statutes." *Gibson v. United States,* 781 F.2d 1334, 1338 (9th Cir.1986), *cert. denied,* 479 U.S. 1054, 107 S.Ct. 928, 93 L.Ed.2d 979 (1987). The district court concluded that plaintiffs had no constitutionally protected property interest in the permits and, accordingly, that no protected property or liberty interest was implicated by their suspension or the notification mailed to Gasco customers.

However, the plaintiffs have alleged throughout this case that the defendants' suspension of Gasco's bulk use permits was motivated by a desire to retaliate against Soranno for his public criticism of the defendants. It is clear that "[s]tate action designed to retaliate against and chill political expression strikes at the heart of the First Amendment." *Gibson,* 781 F.2d at 1338. There is no dispute that Soranno has a protected interest in commenting on the actions of government officials. *See New York Times v. Sullivan,* 376 U.S. 254, 269–70, 84 S.Ct. 710, 720, 11 L.Ed.2d 686 (1964); *McKinley v. City of Eloy,* 705 F.2d 1110, 1113 (9th Cir.1983) (protected interest in criticizing public officials regarding matters of public concern). If the plaintiffs can establish that the decision to suspend the permits was made because of Soranno's exercise of constitutionally protected rights, they have established a first amendment violation, and are entitled to relief under section 1983. *Gibson,* 781 F.2d at 1338. The Sorannos therefore need not establish a legally protected interest in the permits themselves. *See Mt. Healthy City School Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 283–84, 97 S.Ct. 568, 574, 50 L.Ed.2d 471 (1977).[3]

▆ A similar analysis applies to the plaintiffs' claim that the permit suspension was in retaliation for filing suit against the defendants. The right of access to the courts is subsumed under the first amend-

ment right to petition the government for redress of grievances. *See, e.g., California Motor Transp. Co. v. Trucking Unltd.,* 404 U.S. 508, 510, 92 S.Ct. 609, 611, 30 L.Ed.2d 642 (1972); *Harrison v. Springdale Water & Sewer Comm'n,* 780 F.2d 1422, 1427–28 (8th Cir.1986). Deliberate retaliation by state actors against an individual's exercise of this right is actionable under section 1983. *Franco v. Kelly,* 854 F.2d 584, 589 (2d Cir.1988) (intentional obstruction of the right to seek redress "is precisely the sort of oppression that ... section 1983 [is] intended to remedy") (quoting *Morello v. James,* 810 F.2d 344, 347 (2d Cir.1987) (brackets in original)); *Harrison,* 780 F.2d at 1428.

The defendants do not dispute that the allegations of retaliatory action are independent of the due process claims, and that the district court failed to address the former in granting summary judgment. However, they contend that the district court's decision must nevertheless be upheld on the basis that their actions were not motivated by retaliatory intent. In other words, they argue that the plaintiffs cannot meet the causation standard enunciated by the Court in *Mt. Healthy,* 429 U.S. at 285–87, 97 S.Ct. at 575–76.

In *Mt. Healthy,* the Court held that a plaintiff alleging retaliation for the exercise of constitutionally protected rights must initially show that the protected conduct was a "substantial" or "motivating" factor in the defendant's decision. 429 U.S. at 287, 97 S.Ct. at 576. At that point, the burden shifts to the defendant to establish that it would have reached the same decision even in the absence of the protected conduct. *Id.* According to the defendants, APCD was entitled by statute to the information requested, and was similarly entitled to suspend the Gasco permits for not providing that information. Thus, they conclude that they could have suspended the permits and notified Gasco's customers

---

3. In *Mt. Healthy,* the Supreme Court held that an untenured teacher whose contract was not renewed could establish a claim for reinstatement for violation of his constitutional rights if he could establish that the decision not to reinstate him was made by reason of his expression of ideas. The fact that he had no protected property interest in continued employment was not dispositive because his firing, if retaliatory, effectively deprived him of his constitutionally protected right to free speech. 429 U.S. at 283–84, 97 S.Ct. at 574.

in the absence of any protected conduct. In consequence, they argue, Gasco is entitled to no relief.

The defendants misperceive the import of the *Mt. Healthy* causation analysis. The rationale for the rule was stated as follows:

> A rule of causation which focuses solely on whether protected conduct played a part, "substantial" or otherwise, in a decision not to rehire, could place an employee in a better position as a result of the exercise of constitutionally protected conduct than he would have occupied had he done nothing. The difficulty with the rule enunciated by the District Court is that it would require reinstatement in cases where a dramatic and perhaps abrasive incident is inevitably on the minds of those responsible for the decision to rehire, and does indeed play a part in that decision—even if the same decision *would* have been reached had the incident not occurred.

429 U.S. at 285, 97 S.Ct. at 575. (emphasis added). The *Mt. Healthy* test requires defendants to show, by a preponderance of the evidence, that they would have reached the same decision in the absence of the protected conduct. The defendants here have merely established that they *could* have suspended the permits. This court has clearly stated that this is insufficient to support summary judgment. *Allen v. Scribner,* 812 F.2d 426, 435 (9th Cir.), *amended,* 828 F.2d 1445 (9th Cir.1987).

*Allen* involved a suit by a California Department of Food and Agriculture entomologist challenging his superiors' decision to transfer him to a clerical assignment. The plaintiff alleged that the transfer was part of a campaign to harass him in retaliation for publicly airing opinions critical of the Mediterranean Fruit Fly Eradication Project's handling of the medfly infestation problem in California in 1980. He argued that the defendants' actions violated his civil rights under section 1983 and the first amendment.

The district court granted the defendants' motion for summary judgment, but we reversed. After concluding that Allen's expression was protected, and that the evidence indicated that the protected expression was a substantial factor in his transfer and harassment, we addressed whether Allen would have been transferred in the absence of his protected conduct. The defendants argued that Allen's insubordination was sufficient to justify his transfer. We responded:

> The evidence put forth by the defendants is definitive only in establishing that Allen *could* have been transferred ... because of his non-protected activity (*i.e.,* his refusal to obey orders), and not that he *would* have been transferred.... That Allen's insubordinate conduct might have justified an adverse employment decision, including a transfer, does not suffice. The employee in *Mt. Healthy* was a nontenured high school teacher who "*could* have been discharged for no reason whatever." Yet the case was remanded so that the district court might determine whether the teacher *would* have been discharged.

812 F.2d at 435 (emphasis in original) (citations omitted). *See also Schwartzman v. Valenzuela,* 846 F.2d 1209, 1212 (9th Cir. 1988). Noting that motivation generally presents a jury question, 812 F.2d at 436, we concluded that whether Allen would have been transferred was a genuine issue of material fact inappropriate for summary judgment, and remanded for the trier of fact to make that determination.

*Allen* controls this case. The defendants apparently do not dispute that Soranno's activities, which he alleges induced the retaliation, were protected by the first amendment. Viewed in the light most favorable to the plaintiffs, the evidence suggests that Soranno's protected expression was a substantial factor in the decision to suspend the permits and notify Gasco's customers of that suspension. The plaintiffs offer several facts from which a fact finder could infer a retaliatory motive. First, in his deposition, Soranno described a telephone conversation between himself and defendant Morgan in which Morgan allegedly intimated that he would "somehow get even" with Soranno for embarrassing him by generating publicity over

the vapor recovery device regulations and exceptions.

In addition, the timing and nature of the suspension and notice are suspicious. The 1983 permits were suspended in December, just a few weeks before they were to expire. As a condition for granting 1984 permits, the defendants could have requested updated information of a similar nature, or initiated revocation proceedings,[4] but chose to summarily suspend the 1983 permits instead. The plaintiffs contend that a fact finder could infer that the defendants' chosen course of action was designed to maximize harm to Soranno.

Similarly, the defendants mailed a notice of suspension to a number of Gasco's customers on the date that Soranno's attorney was scheduled to meet with defendant Morgan and supply the requested information.[5] Again, this arguably suggests a desire to maximize the harm inflicted upon Soranno, rather than a concern with receiving the requested information.

The defendants' response is merely to emphasize that suspension of the permit was authorized by statute and legally permissible. In other words they *could* have suspended the permits even in the absence of the protected activity. However, they have not established that they *would* have suspended the permits in the absence of Soranno's protected activity. As in *Allen*, the potential section 1983 liability depends upon the defendants' motivation. This is a genuine issue of material fact, Fed.R.Civ.P. 56(c), and is therefore inappropriate for summary judgment.

**B.** *Due Process*

In addition to arguing that the defendants' allegedly retaliatory permit suspension and customer notification violated Soranno's first amendment rights, the plaintiffs claim that the defendants deprived them of liberty and property without due

process. The district court granted summary judgment for the defendants on this issue, holding that the plaintiffs had not been deprived of any constitutionally protected interest, and alternatively, that available post-deprivation procedures satisfied the requirements of due process.

**(1) Protected Interest**

■ The procedural due process guarantees of the fourteenth amendment apply only when a constitutionally protected liberty or property interest is at stake. *Board of Regents v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). The district court held that the plaintiffs had no protected interest in uninterrupted permits, and that under *Paul v. Davis*, 424 U.S. 693, 710–12, 96 S.Ct. 1155, 1165–66, 47 L.Ed.2d 405 (1976), the alleged injury to business reputation alone was insufficient to establish a protected liberty interest. However, the district court did not directly address the plaintiffs' interest in the goodwill of their business. The goodwill of one's business is a property interest entitled to protection; the owner cannot be deprived of it without due process.

We look to independent sources such as state law to define the dimensions of protected property interests. *Paul*, 424 U.S. at 710–12, 96 S.Ct. at 1165–66. California recognizes business goodwill as a property interest. Section 14102 of the California Business and Professions Code states that "[t]he good will of a business is property and is transferable." Cal Bus & Prof. Code § 14102 (West 1987). *See also Baker v. Pratt*, 176 Cal.App.3d 370, 381, 222 Cal. Rptr. 253, 259 (1986) ("The law makes no distinction between goodwill and other property with respect to the right of the owner thereof to recover damages for its impairment or destruction."). Thus, for example, damage to goodwill is recoverable in

---

**4.** Morgan's deposition testimony indicates that revocation could not have been effected without a prior hearing. *See* Cal. Health & Safety Code §§ 42307–09 (West 1986).

**5.** There is apparently some dispute over whether Morgan was aware of Soranno's intention to supply the requested information when the notification letters were sent. Attorney Walter Schmidt's affidavit indicates that Morgan was informed of the purpose of Schmidt's visit before the letters were sent.

an eminent domain proceeding. *People ex rel. Dept. of Transp. v. Muller,* 36 Cal.3d 263, 203 Cal.Rptr. 772, 681 P.2d 1340 (1984). Similar protection afforded business goodwill under Florida law has been deemed sufficient to give rise to due process protection. *See Marrero v. City of Hialeah,* 625 F.2d 499, 514–15 (5th Cir. 1980), *cert. denied,* 450 U.S. 913, 101 S.Ct. 1353, 67 L.Ed.2d 337 (1981).

### (2) The Process Due

■ Due process generally includes an opportunity for some type of hearing before the deprivation of a protected property interest. *Memphis Light, Gas & Water Div. v. Craft,* 436 U.S. 1, 19, 98 S.Ct. 1554, 1565, 56 L.Ed.2d 30 (1978); *Sinaloa Lake Owners Ass'n v. City of Simi Valley,* 864 F.2d 1475, 1481–82 (9th Cir.1989), *amended,* (March 23, 1989). However, there are exceptions to the pre-deprivation hearing requirement. The Supreme Court has stated that "either the necessity of quick action by the State or the impracticality of providing any meaningful predeprivation process, when coupled with the availability of [post-deprivation procedures], can satisfy the requirements of procedural due process." *Parratt v. Taylor,* 451 U.S. 527, 539, 101 S.Ct. 1908, 1915, 68 L.Ed.2d 420 (1981). In *Parratt* the Court concluded that where a deprivation of property is the "result of a random and unauthorized act by a state employee," *id.* at 541, 101 S.Ct. at 1916, meaningful predeprivation process is not possible, and that due process requirements may therefore be satisfied by adequate post-deprivation procedures for obtaining a remedy.

■ Citing *Parratt,* the district court held that even if the plaintiffs' interests were of constitutional dimension, plaintiffs were not deprived of those interests without due process because available post-deprivation remedies satisfied the requirements of due process. The district court viewed this case as controlled by *Parratt* because the plaintiffs' allegations of unlawful retaliation rendered the challenged conduct "random and unauthorized" within the meaning of *Parratt,* making a meaningful pre-deprivation remedy impractical. We reject the district court's conclusion that the defendants' actions were the type of "random and unauthorized" deprivation for which pre-deprivation process is impractical. Nevertheless, we affirm the judgment in favor of the defendants on the procedural due process claim on the basis that the public interest in swift administrative action justifies summary suspension with post-deprivation hearings.

The district court construed the "random and unauthorized" language of *Parratt* too broadly. *Parratt* is limited to situations "in which the state administrative machinery did not and could not have learned of the deprivation until after it had occurred." *Piatt v. MacDougall,* 773 F.2d 1032, 1036 (9th Cir.1985) (en banc); *see also Merritt v. Mackey,* 827 F.2d 1368, 1372 (9th Cir.1987). That is not the case here. Although retaliatory intent may render the defendants' conduct unauthorized, it is not random in that the injury is sufficiently predictable to make a pre-deprivation remedy practicable. The decision to suspend the permits and notify Gasco's customers was a deliberate decision made by the officials possessing the authority to suspend permits at their discretion. *See Merritt,* 827 F.2d at 1372. Defendant Morgan testified that this decision was made after considering a range of possible alternatives.[6]

---

6. Moreover, the defendants' contention throughout this litigation has been that all of their actions were authorized by the California Health and Safety Code and County regulations. It is clear that once the decision to suspend the permit is made, state law expressly provides for post-deprivation hearings. *See e.g.,* Cal.Health & Safety Code §§ 42304, 42306 (West 1986) (authorizing pre-hearing permit suspensions and providing for prompt post-deprivation hearings). Similarly, the defendants contend that the customer notification was consistent with the relevant regulations. Thus, this case is analogous to *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 436, 102 S.Ct. 1148, 1158, 71 L.Ed. 2d 265 (1982), in which the Court held that the Illinois Fair Employment Commission's negligent failure to schedule plaintiff's conference within 120 days as required by statute, resulting in loss of plaintiff's claim, was not "random and unauthorized" within the meaning of *Parratt.* In the Court's view, the deprivation was effected by the 120-day statutory limitation, rather than

However, the "random and unauthorized" deprivation is only one of two situations outlined in *Parratt* in which post-deprivation process may be adequate. It is well-settled that protection of the public interest can justify an immediate seizure of property without a prior hearing. *See, e.g., North American Cold Storage Co. v. City of Chicago,* 211 U.S. 306, 29 S.Ct. 101, 53 L.Ed. 195 (1908) (state may seize and destroy unwholesome food without pre-seizure hearing); *see also United States v. An Article of Device "Theramatic",* 715 F.2d 1339 (9th Cir.1983), *cert. denied,* 465 U.S. 1025, 104 S.Ct. 1281, 79 L.Ed.2d 685 (1984) (governmental seizure of "misbranded" machine under Food, Drug and Cosmetic Act without prior notice or hearing did not violate due process). We have also applied that principle in holding that a physician is not entitled to a pre-deprivation hearing before suspension from Medicare, and publication of that suspension in a local newspaper. *Cassim v. Bowen,* 824 F.2d 791, 797 (9th Cir.1987). Because we view this case as the type of situation in which there is a necessity for quick action to protect the public interest, we affirm the district court's grant of summary judgment for the defendants on the procedural due process claim. *See, e.g., Smith v. Block,* 784 F.2d 993, 996 n. 4 (9th Cir.1986) (the court of appeals may affirm a district court's decision on any ground supported by the record).

The APCD's power to suspend permits immediately is necessitated by the state's interest in enforcing its pollution control laws. The California legislature has determined that swift administrative action may be necessary in order to protect the public health and safety from violations of the state's pollution control regulations. We are not in a position to second-guess that legislative determination. We reject Gasco's argument that due process was violated because no immediate threat to public health was involved in this particular situation. To paraphrase the Supreme Court in

*Hodel v. Virginia Surface Mining & Reclamation Ass'n,* 452 U.S. 264, 302, 101 S.Ct. 2352, 2373, 69 L.Ed.2d 1 (1981), the relevant inquiry is not whether a suspension should have been issued in this particular case, but whether the statutory procedure itself is incapable of affording due process. Given the public interest in ongoing enforcement of pollution control regulations, the statutory procedure authorizing prompt post-deprivation hearings is sufficient to afford bulk plant permit owners due process.

### C. *Standing*

■ The defendants also contend that the district court's decision can be affirmed on the ground that the individual plaintiffs lack standing to assert their claim. The defendants' argument appears to be derived from the well-established doctrine that a shareholder lacks standing to bring a section 1983 action on behalf of the corporation in which he owns shares. *Erlich v. Glasner,* 418 F.2d 226, 228 (9th Cir.1969). Similarly, it is not sufficient for the plaintiff to assert a personal economic injury resulting from a wrong to the corporation. *Shell Petroleum, N.V. v. Graves,* 709 F.2d 593, 595 (9th Cir.), *cert. denied,* 464 U.S. 1012, 104 S.Ct. 537, 78 L.Ed.2d 717 (1983). However, a shareholder does have standing where he or she has been injured directly and independently of the corporation. *Id.* In this case, there are direct and independent injuries to the individual plaintiffs.

This case is brought both by Gasco and by the Sorannos as individuals, and the complaint alleges violations of the rights of both Gasco and the Sorannos (particularly Mr. Soranno). Two separate personal injuries to the individual plaintiffs are alleged. First, the plaintiffs' argument that the defendants' actions were taken in retaliation for Soranno's exercise of first amendment rights clearly alleges a direct and independent personal wrong. The first amend-

---

the conduct of the state employees. As in *Logan,* the plaintiffs' property interest is impaired by operation of California law, which authorizes

pre-hearing suspension and customer notification.

ment rights that were allegedly violated belong to Mr. Soranno, not the corporation. Mr. Soranno clearly has standing to contest the deprivation of those rights.

Second, the individual plaintiffs complain that they have suffered mental and emotional distress as a result of the defendants' actions. The fact that these injuries arose from the same conduct as the corporate injuries does not preclude a finding of direct and independent injury to individual plaintiffs for standing purposes. This circuit has held that the same conduct can result in both corporate and individual injuries. *Gomez v. Alexian Bros. Hosp.*, 698 F.2d 1019, 1021 (9th Cir.1983); *Marshall v. Kleppe*, 637 F.2d 1217, 1222 (9th Cir.1980).

In *Gomez*, the court held that the "humiliation and embarrassment" suffered by plaintiff as a result of the defendants' alleged discrimination against him was a personal injury, distinct from that suffered by his professional corporation. 698 F.2d at 1021. Similarly, in *Marshall* the court held that plaintiff's ulcer and emotional distress which resulted from defendant's denial of his minority business loan authorization were separate personal injuries. 637 F.2d at 1222.

The Sorannos' allegation of emotional distress arising from APCD's customer notification procedure would appear to fall within the rationale of *Gomez* and *Marshall*. The defendants' argument that *Gomez* is distinguishable because the defendants' discriminatory intent in that case was clear is unpersuasive. The intent of the defendants in this case is the very issue in dispute, and at this point the court must view the facts in the light most favorable to the plaintiffs.

### D. *Qualified Immunity*

■ The defendants assert qualified immunity as another alternative ground for

affirming the district court's decision. Government officials performing discretionary functions have qualified immunity from personal liability to the extent that "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The defendants contend that because they merely followed the existing law and procedure for suspension of permits, they are entitled to summary judgment on the basis of qualified immunity. That is not the case.

Assuming, as we must, the truth of the plaintiffs' allegation of retaliation, the defendants are not entitled to summary judgment on the qualified immunity issue. It could hardly be disputed that at the time of the permit suspension an individual had a clearly established right to be free of intentional retaliation by government officials based upon that individual's constitutionally protected expression. *See, e.g., Allen*, 812 F.2d at 436 (material issue of fact regarding whether defendants' actions were based on retaliatory motive precluded summary judgment on qualified immunity grounds). *Cf. Tribble v. Gardner*, 860 F.2d 321 (9th Cir.1988) (where sufficient evidence existed to suggest that defendants' strip-search was for punitive purposes, district court did not err in denying defendants' motion for summary judgment on the basis of qualified immunity).[7]

### E. *Eleventh Amendment*

■ The defendants also claim that the official-capacity suit is barred by the eleventh amendment.[8] A suit against state officials that seeks the payment of retroactive money damages to be paid from the state treasury is barred by the eleventh amendment. *Edelman v. Jordan*, 415 U.S.

---

7. The same analysis applies to the plaintiffs' judicial access claim.

8. The plaintiffs sued the defendants both in their individual and official capacities. An official-capacity suit is, of course, merely an alter-

native means of pleading an action against the governmental entity of which the individual is an agent. *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 3104, 87 L.Ed.2d 114 (1985).

651, 675–78, 94 S.Ct. 1347, 1362–63, 39 L.Ed.2d 662 (1974); *Blaylock v. Schwinden,* 862 F.2d 1352, 1353 (9th Cir.1988). Thus, if the APCD can be characterized as a state entity, the plaintiffs cannot pursue a claim for money damages from the defendants in their official capacities. The critical factor in determining whether the eleventh amendment is applicable is the financial nexus between the APCD and the state treasury. *Edelman,* 415 U.S. at 663–65, 94 S.Ct. at 1355–57.

On the record before us, we are unable to determine whether an award of damages against an APCD would be paid from the state treasury. The parties may develop a more adequate record on remand.

## IV.

## CONCLUSION

We affirm the district court's grant of summary judgment for the defendants on the plaintiffs' due process claims. Because there are genuine issues of material fact regarding the defendants' retaliatory motivation, and because we are unable to affirm the district court on the alternative grounds urged by the defendants on appeal, we reverse the grant of summary judgment on the first amendment claims and remand to the district court for further proceedings.

AFFIRMED IN PART, REVERSED IN PART and REMANDED.