Irving C. STEVENS and Jeanette E. Stevens, Plaintiffs,

v.

CITY OF CANNON BEACH and State of Oregon, acting by and through its Department of Parks and Recreation, Division of State Lands, Land Conservation and Development Commission, and Judicial Department, Defendants.

Civ. No. 95–455–FR.

United States District Court, D. of Oregon.

July 18, 1995.

Garry P. McMurry, Garry P. McMurry & Associates, Portland, OR, for plaintiffs.

William R. Canessa, Campbell, Moberg, Canessa, Faber & Hooley, P.C., Seaside, OR, for defendant City of Cannon Beach.

Theodore R. Kulongoski, Atty. Gen., Eric J. Bloch, Stephen K. Bushong, Asst. Atty. Gen., Salem, OR, for defendant State of Oregon.

OPINION

FRYE, Judge:

The matters before the court are (1) the motion of the defendant City of Cannon Beach to dismiss (#13); and (2) the motion of the defendant State of Oregon to dismiss (#14).

**ALLEGATIONS OF THE COMPLAINT**

In 1917, the Ecola Inn was built on property to the south of Tax Lots 8500 and 8501. It was built on a promontory created over the dry sand by the construction of a wooden retaining wall located approximately 300 feet east of the boundary of the mean high water mark.

In 1933, the Ecola Tavern was built behind a concrete seawall and car ramp to the beach, extending farther out on the dry sand and more southerly to the Ecola Inn.

In 1939, E.A. Hollingshead extended the original seawall north, some 300 feet, to the east of which the present "Surf, Sand and Resort Hotel" was built. That seawall abuts the south boundary of Tax Lot 8501.

In 1957, the plaintiffs, Irving C. Stevens and Jeanette E. Stevens, purchased Tax Lots 8500 and 8501 located immediately north of the "Surf, Sand and Resort Hotel" property, with the expectation of developing it for motel/hotel use.

In 1966, the owners of the "Surf, Sand and Resort Hotel" property, placed driftwood logs upright in front of their seawall and strung a wire between the driftwood logs to allow their resort guests use of the area of dry sand.

In 1967, the Oregon legislature adopted O.R.S. 390.605 *et seq.*, declaring as its policy, in part:

The Legislative Assembly recognizes that over the years the public has made frequent and uninterrupted use of the ocean shore and recognizes, further, that where such use has been legally sufficient to create rights or easements in the public through dedication, prescription, grant or otherwise, that it is in the public interest to protect and preserve such public rights or easements as a permanent part of Oregon's recreational resources.

O.R.S. 390.610(2). This legislation provided for improvements upon the dry sand portion of the ocean shore pursuant to a permit system to be administered by the Department of Transportation (now the Department of Parks and Recreation). O.R.S. 390.635–655.

Tax Lot 8500 is above and east of the zone line required by O.R.S. 390.605, which was adopted in 1969 to define the eastern boundary of the ocean shore. Tax Lot 8501 lies west of the statutory line and extends westerly to the mean high tide line of the Pacific Ocean.

In 1968, the State of Oregon brought suit in the Circuit Court of the State of Oregon for the County of Clatsop in *State ex rel Thornton v. Hay,* seeking a mandatory injunction for removal of the fence erected by the owners of the "Surf, Sand and Resort Hotel" property. The Clatsop County Circuit Court found in favor of the State of Oregon and entered a decree enjoining the

fence maintenance based upon the doctrine of the owner's implied dedication to the State of Oregon of a public recreational easement to the dry sands of the beach.

In December of 1969, the Oregon Supreme Court decided the appeal of the *Thornton* case. The Oregon Supreme Court affirmed the decision of the Clatsop County Circuit Court on the grounds that the English common law doctrine of custom supported the recreational easement.

In 1970, Irving and Jeanette Stevens sought a permit from the State of Oregon to construct a retaining-seawall around the east 120 feet of Tax Lot 8501. This permit was denied.

In 1973, the Oregon legislature formed the Land Conservation and Development Commission (LCDC). On December 18, 1976, the LCDC adopted Goal 18 "BEACHES AND DUNES." In 1985, the LCDC amended Goal 18 to require local governments and state agencies to prohibit any residential, commercial or industrial buildings on "Beaches."

In 1982, Irving and Jeanette Stevens sought to obtain from the Department of Parks and Recreation of the State of Oregon a relocation of the statutory beach zone line to the actual beach vegetation line. This request was denied. In 1984, the Stevens again sought to readjust the statutory beach zone line to conform to the beach vegetation line. This request was denied. This denial was appealed to the Transportation Commission of the State of Oregon. The appeal was denied on the grounds that the Parks and Recreation Department would not adjust the beach zone line on behalf of an individual private property owner.

In 1986, the City of Cannon Beach enacted Ordinance Section 3.180 to implement Goal 18. Section 3.180 creates an Active Dune and Beach Overlay Zone, which prohibits all residential development and all commercial or industrial buildings on the beach.

On August 24, 1989, Irving and Jeanette Stevens and the lessee of the land jointly applied to the Department of Parks and Recreation for a permit to build a replacement retaining-seawall in front of the "Surf, Sand and Resort Hotel," as the old wall was deteriorating, and to extend the replacement retaining-seawall across the east end of Tax Lot 8501 to stabilize it for construction of the motel contemplated by the lease. In addition, the Stevens and the lessee filed applications with the Division of State Lands for a fill permit and with the City of Cannon Beach for a permit to build the retaining wall. Each of the applications for permits were denied on the grounds that, while zoned for residential/motel use, the property was subject to amended Goal 18, which prohibits all residential, commercial or industrial development.

Irving and Jeanette Stevens thereafter filed an amended complaint in the Clatsop County Circuit Court for inverse condemnation and a petition for *de novo* review, pursuant to O.R.S. 390.658, alleging that the City of Cannon Beach and the State of Oregon had taken their property by regulation and by unconstitutionally applying the prohibition of Goal 18 to their property under the Fifth and Fourteenth Amendments to the United States Constitution.

The City of Cannon Beach and the State of Oregon moved to dismiss the action in the Clatsop County Circuit Court on the grounds that the *Thornton* case held that owners of dry sand beaches in the State of Oregon hold their private property, between the statutory beach zone line and the mean high tide line, subject to a recreational easement based upon the English common law doctrine of custom. Irving and Jeanette Stevens opposed the motion to dismiss.

In a letter opinion dated January 8, 1991, the Honorable Thomas E. Edison, Circuit Court Judge, ruled that the *Thornton* case stood for the rule that the owners of beach front, dry sand property in the State of Oregon had no right to exclude the public from the dry sand, and therefore the inverse condemnation action of Irving and Jeanette Stevens was barred because no property right in the beach front was taken from the Stevens.

On March 20, 1991, Irving and Jeanette Stevens filed a notice of appeal to the Oregon Court of Appeals. Following briefing and

argument, the Oregon Court of Appeals on August 5, 1992 affirmed the trial court.

On September 2, 1992, Irving and Jeanette Stevens filed a petition for review with the Oregon Supreme Court, which petition was granted. On July 1, 1993, the Oregon Supreme Court rendered its decision affirming the lower court's ruling.

On September 27, 1993, Irving and Jeanette Stevens filed a petition for a writ of certiorari in the United States Supreme Court. On March 21, 1994, the United States Supreme Court denied the petition of the Stevens for a writ of certiorari, two justices dissenting.

On April 12, 1995, Irving and Jeanette Stevens filed this action in the United States District Court for the District of Oregon. In their complaint, the Stevens allege six claims for relief as follows: (1) the deprivation of property without due process of law; (2) the deprivation of property without substantive due process and without the equal protection of the law; (3) declaratory relief; (4) injunctive relief; (5) damages against the City of Cannon Beach; and (6) attorney fees and costs.

The Stevens seek an evidentiary hearing, as well as (1) a declaratory judgment declaring unlawful the action by the City of Cannon Beach and the State of Oregon which causes and has caused the Stevens to suffer a continuing physical invasion and deprivation of all right to develop their property; and (2) a preliminary and permanent injunction directing the City of Cannon Beach and the State of Oregon to cease from denying to the Stevens a permit to develop their property on the grounds that amended Goal 18 and the *Thornton* case decision bars any development upon the dry sand beach by Irving and Jeanette Stevens.

## CONTENTIONS OF THE PARTIES

The State of Oregon contends that this action must be dismissed on the grounds that the claims of Irving and Jeanette Stevens are barred by the doctrine of *res judicata*, the Eleventh Amendment; and absolute judicial immunity. The State of Oregon contends that Irving and Jeanette Stevens seek to relitigate claims that they have already pursued through the courts of the State of Oregon and to the United States Supreme Court.

Irving and Jeanette Stevens contend that the doctrine of *res judicata* cannot be applied to this federal action because (1) the issue of procedural due process was not raised until after oral argument in the Oregon Court of Appeals; and (2) there has been a fundamental shift in the law in *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992), so as to make the application of the doctrine of claim preclusion unfair. The Stevens argue that they should be allowed to proceed on their claim that they have been denied their right to procedural due process.

## STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) will only be granted if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Gibson v. United States*, 781 F.2d 1334, 1337 (9th Cir.1986), *cert. denied*, 479 U.S. 1054, 107 S.Ct. 928, 93 L.Ed.2d 979 (1987). The review is limited to the complaint, and all allegations of material fact are taken as true and viewed in the light most favorable to the non-moving party. *Cassettari v. Nevada County, Cal.*, 824 F.2d 735, 737 (9th Cir.1987).

## APPLICABLE LAW

The Full Faith and Credit Act, 28 U.S.C. § 1738, requires a federal court to give the same preclusive effect to a state court judgment as another court of that State would give. "Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so." *Allen v. McCurry*, 449 U.S. 90, 96, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980).

Oregon courts give preclusive effect to final judgments of the state courts to bar subsequent claims "based on the same factual transaction" that was at issue in the first case, as long as the claims are "of such a nature as could have been joined in the first

action." *Van De Hey v. United States Nat'l Bank,* 313 Or. 86, 91, 829 P.2d 695 (1992) (quoting *Drews v. EBI Cos.,* 310 Or. 134, 140, 795 P.2d 531 (1990)).

■ *Res judicata* "bars subsequent actions on all grounds for recovery that could have been asserted, whether they were or not." *Palomar Mobilehome Park Ass'n v. City of San Marcos,* 989 F.2d 362, 365 (9th Cir.1993).

## ANALYSIS

In the state court action challenging the denial of the 1989 application of Irving and Jeanette Stevens to build a retaining seawall on their dry sand beach property in Cannon Beach, the Oregon Court of Appeals stated:

> After oral arguments in this case, the United States Supreme Court decided *Lucas v. South Carolina Coastal Council,* 505 U.S. [1003], 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992). The Court said:
>
>> "Where the State seeks to sustain regulation that deprives land of all economically beneficial use, we think it may resist compensation only if the logically antecedent inquiry into the nature of the owner's estate shows that the proscribed use interests were not part of his title to begin with." 505 U.S. at [——], 112 S.Ct. at 2899, 120 L.Ed.2d at 820. (Footnote omitted.)
>
> The opinion makes it clear that that issue is to be decided under the "State's law of property and nuisance." [505] U.S. at [——], 112 S.Ct. at 2900, 120 L.Ed.2d at 821.
>
> *State ex rel Thornton v. Hay,* [254 Or. 584, 462 P.2d 671 (1969) ], is an expression of state law that the purportedly taken property interest was not part of plaintiffs' estate to begin with. Accordingly, there was no taking within the meaning of the Oregon or United States Constitutions. The trial court did not err by dismissing the taking claims.

*Stevens v. City of Cannon Beach,* 114 Or. App. 457, 835 P.2d 940 (1992) (footnote omitted).

In the opinion of the Oregon Supreme Court affirming the decision of the Oregon Court of Appeals filed on July 1, 1993, the Oregon Supreme Court discussed and examined *Lucas.* The Oregon Supreme Court states, in part:

> Applying the *Lucas* analysis to this case, we conclude that the common-law doctrine of custom as applied to Oregon's ocean shores in *Thornton* is not "newly legislated or decreed"; to the contrary, to use the words of the *Lucas* court, it "inhere[s] in the title itself, in the restrictions that background principles of the State's law of property and nuisance already placed upon land ownership." *Id.* at [——], 112 S.Ct. at 2900, 120 L.Ed.2d at 821. As noted in *Hay v. Bruno, supra,* 344 F.Supp. [286] at 289 [ (D.C.Or.1972) ], "there was no sudden change in either the law or the policy of the State of Oregon. For at least 80 years, the State as a matter of right claimed an interest in the disputed land." Plaintiffs' argument that a "retroactive" application of the *Thornton* rule to their property is unconstitutional, is not persuasive. *Thornton* did not create a new rule of law and apply it retroactively to the land at issue in that case, *Hay v. Bruno, supra;* nor did *Thornton* create a new rule of law as applied to plaintiffs' land here. *Thornton* merely enunciated one of Oregon's "background principles of * * * the law of property." *Lucas, supra,* [505] U.S. at [——], 112 S.Ct. at 2900, 120 L.Ed.2d at 821. We therefore agree with the Court of Appeals, which concluded that the trial court's reading and application of *Thornton* were correct. 114 Or.App. at 459, 835 P.2d 940.

*Stevens v. City of Cannon Beach,* 317 Or. 131, 142–43, 854 P.2d 449 (1993).

On March 21, 1994, the United States Supreme Court denied certiorari on the appeal of the Stevens from the decision of the Oregon Supreme Court. —— U.S. ——, 114 S.Ct. 1332, 127 L.Ed.2d 679 (1994).

■ In their complaint, Irving and Jeanette Stevens state a claim for relief based upon the same facts alleged in the state court—the denial of the Stevens' application for a permit to build a retaining seawall. The Stevens contend that this court should

relitigate these same facts on the grounds that there has been a new, fundamental shift in the applicable law in *Lucas v. South Carolina Coastal Council,* 505 U.S. 1003, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992), which requires an evidentiary hearing on the issue of whether the law of custom applies to a particular tract of land.

This issue has been decided by the Oregon Supreme Court in *Stevens v. City of Cannon Beach,* 317 Or. at 142–43, 854 P.2d 449. The opinion of the United States Supreme Court in *Lucas* filed on June 29, 1992 has been specifically noted, applied and/or distinguished by the Oregon Court of Appeals, by the Oregon Supreme Court, and by the United States Supreme Court in the dissent published with the denial of the petition for a writ of certiorari. By March 21, 1994, the date that the United States Supreme Court denied the petition of the Stevens for a writ of certiorari and the date that the decision of the Oregon Supreme Court became final, the *Lucas* opinion had been law for one year and nine months and had been fully applied by the Oregon courts to the same parties and the same facts before the court in this case.

There are no facts in this case to support the claim of Irving and Jeanette Stevens that *res judicata* should not apply to the decision of the state court because of a new and fundamental shift in the law applicable to the claims made by the Stevens. The Stevens had a full and fair opportunity to present any and all issues relating to their claim that the actions of the City of Cannon Beach and the State of Oregon constituted a taking without due process.

To the extent that Irving and Jeanette Stevens seek to state a new or different claim that they were deprived of their right to due process of law because the state court disposed of the taking claim on a motion to dismiss without an evidentiary hearing, this claim is barred by the doctrine of *res judicata.* The full record of procedure used by the trial court and the Oregon Court of Appeals was before the Oregon Supreme Court. In addition, these same procedural facts were before the United States Supreme Court when the petition for a writ of certiorari was denied. The Stevens had a full and fair opportunity to present any and all issues relating to any claim that the procedure followed was not adequate. The Oregon Supreme Court has determined that there was no taking within the meaning of the Oregon or United States Constitutions. This determination, even if erroneous, operates to preclude consideration of this issue and all other issues which could have been asserted in the state court action. *See Palomar Mobilehome Park Ass'n v. City of San Marcos,* 989 F.2d at 365.

### CONCLUSION

The issue before the court involving the parties before this court has been litigated to final judgment in the courts of the State of Oregon. All parties had a full and fair opportunity to present their cases. The doctrine of *res judicata* bars this action.

The motions to dismiss of the City of Cannon Beach (# 13) and the State of Oregon (# 14) are granted.