Patrick **VINATIERI**, Plaintiff,

v.

Aaron **MOSLEY**, et al., **Defendants.**

No. C 10–3854 RS.

United States District Court,
N.D. California,
San Francisco Division.

April 7, 2011.

---

John Houston Scott, Scott Law Firm, San Francisco, CA, for Plaintiff.

Kristen K. Preston, Mark A. Jones, Jones & Dyer a Professional Corporation, Sacramento, CA, for Defendant.

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

RICHARD SEEBORG, District Judge.

### I. INTRODUCTION

The County of Napa, and Officers Aaron Mosley, Craig Wong, Cory Johnson, and Oscar Ortiz move to dismiss plaintiff Patrick Vinatieri's First Amended Complaint ("FAC") for failure to state a plausible claim. As against the municipal defendants and the officers, Vinatieri asserts six claims for relief: (1) intentional and arbitrary discrimination in violation of the Fourteenth Amendment; (2) deliberate indifference to plaintiff's medical needs; (3) conspiracy to violate the Fourteenth Amendment, premised on the same equal protection theory advanced in the first claim; (4) conspiracy to violate the Fourteenth Amendment, predicated on a substantive due process theory; (5) conspiracy to retaliate in violation of the First Amendment; and (6) conspiracy to violate the Fourth Amendment's guarantee against unreasonable search and seizure.

### II. BACKGROUND

The FAC advances the following facts. Late in the evening of August 30, 2008, Patrick Vinatieri called the Sherriff's Department of Napa County to complain of loud music emanating from the property owned by defendants Arnold Vallerga and his son Michael, located roughly 70 feet from Vinatieri's property, and through which the Vallergas held an easement. Deputy Craig Wong responded to Vinati-

eri's call and, after speaking with Vinatieri, ventured to the Vallerga property to investigate. Vinatieri avers that he was confronted soon after Wong departed by Michael Vallerga and his wife, Eileen McMullen, on the road near Vinatieri's home. Vinatieri explains he was holding a video camera in one hand, and a cell phone in the other. A fight ensued. According to Vinatieri, the couple forced him to the ground and then repeatedly kicked his head.

When Wong returned to Vinatieri's property, he found the plaintiff beaten and dazed. The officer called for assistance and, within minutes, was joined by Deputies Mosley and Johnson, and Sergeant Ortiz. Vinatieri's children and Michael Vallerga's father, Arnold, were also present when the officers arrived. The Vinatieri children apparently urged the officers to arrest Michael Vallerga, but they did not do so. Instead, one of them telephoned for an ambulance. When it arrived, Vinatieri claims the officers directed the vehicle to the Vallerga property. Complaining of a back injury, Michael Vallerga was placed in the ambulance. Although Vinatieri claims his injuries were visibly severe, he notes that the officers instructed him to ride in the same ambulance with Vallerga. Finding this unacceptable, Vinatieri drove to the hospital instead with his children. Soon after his release, Vinatieri contends he tried on two occasions to schedule a meeting with the Napa County Sheriff to discuss the incident but was told the Sheriff was unavailable.

The dispute between these neighbors long predates the August 2008 incident. In fact, Vinatieri recounts that a feud between the families began in the late 1970s, soon after Vinatieri purchased the neighboring lot. By the early 1990s, Vinatieri relates that the families were at cross purposes in civil litigation. Their disagreement appears to stem principally from environmental disputes over the Vallerga family's land use, but also concerns use of the easement. Each side has over the years reported the other for various misdeeds to the Sheriff's Department, but Vinatieri asserts that over time the Department began to favor the Vallerga family. In particular, Vinatieri claims Officer Mosley developed a friendship with them. Allegedly as a result, Mosley frequently dropped by Vinatieri's property to investigate complaints and on several occasions stopped friends and visitors on their way off the property to check on reports of disorderly behavior and drunk driving. When Vinatieri complained to the local Sheriff of Mosley's suspected alliance with the Vallerga family, he avers the Sherriff did not take his complaint seriously, but responded instead, "the deputies can be friends with your neighbors." On the night of August 30, 2008, Vinatieri claims Mosley was responsible for convincing the other officers at the scene not to arrest Michael Vallerga or Eileen McMullen. More broadly, Vinatieri theorizes that Mosley, at some point prior to August 30, 2008, agreed to use his influence to shield the Vallerga family from penal consequences. As a result, Vinatieri insists the Vallerga family felt empowered and even encouraged to resort to violence on that August evening.

### III. LEGAL STANDARD

When addressing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must accept a plaintiff's factual allegations as true and construe the complaint in the light most favorable to that party. *Jenkins v. McKeithen*, 395 U.S. 411, 421, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969). Dismissal is appropriate where a complaint lacks "a cognizable legal theory or sufficient facts

to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.,* 521 F.3d 1097, 1104 (9th Cir.2008) (citation omitted). In considering a Rule 12(b)(6) motion, a district court generally may not take into account material beyond the pleadings. *Fort Vancouver Plywood Co. v. United States,* 747 F.2d 547, 552 (9th Cir.1984). The exception is material properly submitted as part of the complaint. *Amfac Mtg. Corp. v. Arizona Mall of Tempe,* 583 F.2d 426, 429–30 (9th Cir. 1978). Rule 8(a)(2) demands that a pleading include a "short and plain statement of the claim showing that the pleader is entitled to relief." The Supreme Court has instructed that this mandate does not require "detailed factual allegations," but "demands more than an unadorned, the-defendant-harmed-me accusation" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (internal quotation marks omitted). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Id. (quoting Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

■ Federal Rule of Civil Procedure 15(a) instructs that leave to amend an order of dismissal "shall be freely given when justice so requires." *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). "Rule 15's policy of favoring amendments to pleadings should be applied with extreme liberality." *Morongo Band of Mission Indians v. Rose,* 893 F.2d 1074, 1079 (9th Cir.1990). That said, a court may foreclose amendment where it would be futile or subject to dismissal. *See Gadda v. State Bar of Cal.,* 511 F.3d 933, 939 (9th Cir.2007).

## IV. DISCUSSION

### 1. *Individual Officer Liability*

■ To state a section 1983 claim against an individual officer, a plaintiff must plead: (1) a defendant acting under color of state law; (2) deprived plaintiff of rights secured by the Constitution or federal statutes. *Gibson v. United States,* 781 F.2d 1334, 1338 (9th Cir.1986) (*citing Smith v. Cremins,* 308 F.2d 187, 190 (9th Cir.1962)). To demonstrate a *conspiracy* to violate constitutional rights, "the plaintiff must state specific facts to support the existence of the claimed conspiracy." *Olsen v. Idaho State Bd. of Medicine,* 363 F.3d 916, 929 (9th Cir.2004) (*quoting Burns v. County of King,* 883 F.2d 819, 821 (9th Cir.1989)). More specifically, a plaintiff must allege facts suggestive of "an agreement or 'meeting of the minds' to violate constitutional rights." *United Steelworkers of America v. Phelps Dodge Corp.,* 865 F.2d 1539, 1540–41 (9th Cir. 1989) (citations omitted). "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." *Id.* at 1541.

### a. *Statute of Limitations*

■ The Supreme Court has established that the forum state's statute of limitations for personal injury torts applies to section 1983 actions. *Wilson v. Garcia,* 471 U.S. 261, 267–69, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). *See also Olsen v. Idaho State Bd. of Medicine,* 363 F.3d 916, 926 (9th Cir.2004). California Code of Civil Procedure section 335.1 provides that the statute of limitations for personal injury actions is two years. While state law also provides the applicable period for the conspiracy claim, federal law governs the time of accrual. *Gibson,* 781 F.2d at 1340 (*citing Venegas v. Wagner,* 704 F.2d 1144,

1145 (9th Cir.1983); *Gowin v. Altmiller,* 663 F.2d 820, 822 (9th Cir.1981)). "The Ninth Circuit determines the accrual of civil conspiracies for limitations purposes in accordance with the last overt act doctrine." *Id.* (*citing Venegas,* 704 F.2d at 1146; *Bergschneider v. Denver,* 446 F.2d 569 (9th Cir.1971)). Under this doctrine, "[i]njury and damage in a civil conspiracy action flow from the overt acts, not from 'the mere continuance of a conspiracy.'" *Id.* (*quoting Kadar Corp. v. Milbury,* 549 F.2d 230, 234 (1st Cir.1977)). As the Court in *Gibson* explained, because "the cause of action runs separately from each overt act that is alleged to cause damage to the plaintiff, [s]eparate conspiracies may not be characterized as a single grand conspiracy for procedural advantage." *Id.* (alterations in original, citations omitted).

The fight between Vinatieri and his neighbors occurred on August 30, 2008. Vinatieri filed his original Complaint on August 27, 2010. Insofar as the constitutional violations underlying Vinatieri's section 1983 claims occurred on that date, there is no question that Vinatieri's claims were filed within the limitations period. To the extent, however, that plaintiff has included facts and details stemming as far back as 1978, defendants argue *Gibson* prevents this Court from considering such events as acts because they occurred outside the two-year limitations period (before August 27, 2008). While defendants are correct that the limitations period would bar pre-August 27, 2008 conduct as actionable, such factual averments may appropriately be considered for context and background.

### b. *Equal Protection*

In his first claim for relief, Vinatieri asserts that defendants violated his right to equal protection, as guaranteed by the Fourteenth Amendment. Vinatieri's third claim alleges defendants conspired to do the same. He argues that Mosley, as a product of his friendship with the Vallerga family, accorded them special treatment. As a result of that understanding, Vinatieri claims Mosley convinced his fellow officers on the night of August 30 not to arrest Michael Vallerga or Eileen McMullen. Defendants do not dispute that the officers were acting under color of state law. They reject, however, that any constitutional violation occurred, or that a conspiracy was afoot. Defendants argue that, as a threshold matter, Vinatieri has not pointed to a colorable underlying constitutional violation. It is Vinatieri's theory that the officers improperly singled him out when they refused to arrest Vallerga and McMullen under circumstances purportedly suggestive of a crime. Vinatieri insists he was "singled out" because Mosley liked the Vallerga family and *disliked* Vinatieri. An officer's decision to arrest is inherently vested with discretion, defendants contend, and there is no general, constitutional right to state protection against criminals.

While that proposition is legally accurate, it does not follow that an officer's omission or failure to arrest is immune from equal protection scrutiny. In *Elliot–Park v. Manglona,* for example, the Ninth Circuit found that a victim of a traffic collision pleaded a colorable equal protection violation where she alleged that officers failed to arrest or even investigate the at-fault driver. 592 F.3d 1003 (9th Cir. 2010). There, a man collided with plaintiff's vehicle. Although the plaintiff claimed the man was obviously intoxicated, the responding officers did not perform a breathalyzer test or arrest him. Although the officers did call an ambulance for plaintiff and question bystanders, they otherwise did not treat the drunk driver as a criminal suspect. The plaintiff claimed her efforts to pursue criminal charges were further thwarted by the responding offi-

cers. Importantly, the plaintiff alleged the officers were motivated by their racial affinity to the drunk driver—that driver and all responding officers were ethnically Micronesian while plaintiff was ethnically Korean. While the Court agreed that "individuals don't have a constitutional right to have police officers arrest others who have victimized them," *id.* at 1006, and that the "officers' discretion in deciding whom to arrest is certainly broad," that discretion, according to the Court, plainly "cannot be exercised in a racially discriminatory fashion." *Id.* In other words, the officers were not permitted to give the drunk driver a "pass" if the reason behind it was racial bias in favor of the driver and against the plaintiff. *Id.* *See also Estate of Macias v. Ihde,* 219 F.3d 1018, 1028 (9th Cir.2000) (noting that while there is no right to state protection against criminals, "[t]here is a constitutional right ... to have police services administered in a non-discriminatory manner—a right that is violated when a state actor denies such protection to disfavored persons"). The Court also rejected the officers' argument that "investigation and arrest" are not "protective services" unless there is a continuing danger to the victim. The Court reasoned that "[i]f police refuse to investigate or arrest people who commit crimes against a particular ethnic group, it's safe to assume that crimes against that group will rise." *Id.* at 1007.

▮ Vinatieri's equal protection theory has some facial similarity to that advanced in *Manglona.* He suggests the officers abused their discretion by refusing to arrest Vinatieri's attackers because, at best, Mosley disliked Vinatieri and, at worst, because Mosley had *sacrificed* his discretion when he promised to use his office to benefit the Vallerga family. Unlike in *Manglona,* however, Vinatieri does not advance a race-based claim. In fact, he acknowledges that he has not alleged membership in any protected class. Instead, he argues he is a member of a "class of one," and cites to the Supreme Court's paradigmatic cases in that arena: *Village of Willowbrook v. Olech,* 528 U.S. 562, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000) and *Engquist v. Oregon Department of Agriculture,* 553 U.S. 591, 128 S.Ct. 2146, 170 L.Ed.2d 975 (2008).

▮ In *Olech,* the Court explained that "[o]ur cases have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that [he or] she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." 528 U.S. at 564, 120 S.Ct. 1073. The Court later narrowed the scope of viable "class of one" claims in *Engquist.* There, the Court clarified that a plaintiff cannot advance a "class of one" equal protection claim in the employment context. The Court went on to reason that such a theory is workable only where there is some "clear standard against which departures, even for a single plaintiff, could be readily assessed." *Engquist,* 553 U.S. at 602, 128 S.Ct. 2146. In other words, where an official has discretion to make a decision "based on a vast array of subjective, individualized assessments," "the rule that people should be 'treated alike, under like circumstances and conditions' is not violated ... because treating like individuals differently is an accepted consequence of the discretion granted." *Id.* at 603, 128 S.Ct. 2146 (citations omitted). The example drawn by the Court is of particular importance here: a traffic officer stationed on a busy highway has discretion to choose randomly among violators, and to single out one speeder without violating the equal protection clause. "[A]llowing an equal protection claim on the ground that a ticket was given to one person and not others,

even if for no discernable or articulable reason," the Court explained, "would be incompatible with the discretion inherent in the challenged action." *Id.* at 604, 128 S.Ct. 2146.

Here, Vinatieri's class of one theory presents two complications not present in the scenario reviewed in *Manglona.* First, defendants reiterate their argument that an officer's decision not to arrest an individual is inherently discretionary. Absent a suspect classification as in *Manglona,* defendants insist the Court need look no farther than the traffic officer in *Engquist* for the proposition that a plaintiff cannot make out a class of one theory to support a claim involving selective enforcement of the law or failure to render police services evenly. Second, defendants argue Vinatieri has not identified to whom, exactly, he was "similarly situated."

Turning to defendants' first point, their reading of *Engquist* is not without some support in this district. Although it does not appear that the Ninth Circuit has addressed the issue directly, at least one district court has reasoned that equal protection claims targeting officer decision-making should be limited to those alleging membership in a suspect class. *See Mazzeo v. Gibbons,* No. 08–01387, 2010 WL 4384207, at *7 (D.Nev. Oct. 28, 2010) ("[T]he Court does not suggest that discretionary governmental decision-making may never run afoul of the Equal Protection Clause—it merely concludes that [plaintiff's] use the class-of-one doctrine is improper. Decisions based upon "an unjustifiable standard such as race, religion, or other arbitrary classification"—traditional suspect classes—are intolerable under the Equal Protection Clause."). Vinatieri insists a blanket prohibition of class of one claims targeting law enforcement decision-making misses the point advanced in *Engquist.* The *Engquist* traffic cop exercised his discretion blindly. Vinatieri has alleged, in contrast, that Mosley and his colleagues refused to arrest his assailants, under circumstances that might ordinarily suggest a crime had taken place, because Mosley disliked the plaintiff personally (or at least liked him much less than the Vallerga family). If true, Vinatieri argues, the reason cannot possibly be a rational exercise of discretion.

For support, Vinatieri cites to an opinion from the Seventh Circuit. In *Hanes v. Zurick,* 578 F.3d 491 (7th Cir.2009), the court found a plaintiff had pleaded a "class of one" equal protection claim where he alleged police officers continually showed favoritism to one side in a set of warring neighbors. "*Engquist* does show that some discretionary police decision-making is off-limits from class-of-one claims," the court reasoned, but, an "officer motivated by malice alone is not exercising discretion and is not weighing the factors relevant to the officer's duties to the public." *Id.* at 496. That rationale it recognizes the discretion inherent in law enforcement decision-making but exempts actions inspired by purely irrational motives. Certainly, while it may prove difficult to show that Vinatieri was singled out solely on account of Mosley's personal malice or because he agreed, as the FAC insists, to do the Vallerga family's "bidding," whether Vinatieri has *pleaded* such a claim is a different question.

Even if it is possible, however, to plead a class of one claim in this context, Vinatieri has not explained to *whom* he was similarly situated. The phrase is entirely absent from the FAC. The equal protection claim must be dismissed, although Vinatieri may amend the FAC if he can do so. Because the conspiracy claim assumes an underlying constitutional violation, it must also be dismissed with leave to amend.

#### c. *Deliberate Indifference to Medical Needs*

Vinatieri's second claim for relief, also brought under the auspices of section 1983, avers the officers were "deliberately indifferent" to his medical needs. The deliberate indifference standard classically applies to government action in the context of a *detainee's* medical needs (a detainee relies on the due process clause; a person convicted of a crime and in custody relies on the eighth amendment). *See Gibson v. County of Washoe, Nevada,* 290 F.3d 1175, 1187 (9th Cir.2002) ("[P]ersons in custody ha[ve] the established right not to have officials remain deliberately indifferent to their serious medical needs.") (citation omitted; alteration in original). Vinatieri indisputably was not under arrest or otherwise detained and his reliance on the "deliberate indifference" standard is therefore inapt. Even assuming for the sake of argument that Vinatieri was detained, however, defendants argue the FAC as pleaded negates the medical needs claim. Vinatieri acknowledges that the officers did summon emergency medical help, and that the responding medical team offered transportation to a local hospital. The problem from Vinatieri's perspective, apparently, was that the officers called only a *single* ambulance, and both Michael Vallerga and Vinatieri complained of injuries requiring a hospital visit. Vinatieri indisputably could have used the ambulance for transport to the hospital but simply chose not to. If anyone prevented Vinatieri from riding in the ambulance, it was Vinatieri himself or perhaps Michael Vallerga, but not the responding officers. The claim must therefore be dismissed. As amendment would be futile, leave to amend is not warranted.

#### d. *Substantive Due Process*

In his fourth claim for relief, Vinatieri alleges the public and private defendants' alleged conspiracy ran afoul of the Fourteenth Amendment's substantive due process guarantee. Specifically, Vinatieri asserts that the alleged conspiracy "was the moving force behind the trespass and assault that caused damage and harm to the plaintiff," and that the conspiracy "shocks the conscience in violation of plaintiff's right to substantive due process ...." (FAC § 56.) Substantive due process protects individuals from arbitrary deprivation of their liberty by government. *Brittain v. Hansen,* 451 F.3d 982, 991 (9th Cir.2006) (*citing County of Sacramento v. Lewis,* 523 U.S. 833, 845–49, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998)). The Supreme Court, moreover, has described the cognizable level of executive abuse of power as that which "shocks the conscience." *Lewis,* 523 U.S. at 846, 118 S.Ct. 1708. That is, only the most egregious official conduct rises to the level of "arbitrary" in a constitutional sense. *Id.* "Such conduct can be shown by conduct intended to injure in some way unjustifiable by any government interest." *Brittain,* 451 F.3d at 991 (*quoting Lewis,* 523 U.S. at 849, 118 S.Ct. 1708). A plaintiff must, however, do more than merely allege "conscious shocking" action. *Id.* As a threshold matter, a plaintiff must show a government deprivation of life, liberty, or property to present a substantive due process claim. *Id.* (*citing Squaw Valley Dev. Co. v. Goldberg,* 375 F.3d 936, 948 (9th Cir.2004)) (internal quotation marks omitted). This is because "there is no general liberty interest in being free from capricious government action." *Id.* (*quoting Squaw Valley,* 375 F.3d at 949).

To demonstrate a constitutional violation based on substantive due process, then, Vinatieri must allege both a deprivation of his life, liberty or property plus conscience shocking behavior by the

government. Vinatieri has not expressly explained his theory as to how the requisite deprivation occurred. Viewing the FAC liberally, however, it is at least apparent that Vinatieri claims Mosley had a friendship with the Vallerga family, and that this friendship escalated into some kind of understanding between the parties that Mosley would exercise his influence to shield them from penal consequences. The FAC concludes that, as a result, Mosley was responsible for McMullen and Vallerga's actions, and Vinatieri's resulting injuries, on the night of August 30, 2008. The Constitution protects a citizen's liberty interest in his or her own bodily security. *Kennedy v. City of Ridgefield,* 439 F.3d 1055, 1061 (9th Cir.2006). "[A]lthough the state's failure to protect an individual against private violence does not generally violate the guarantee of due process, it can where the state action 'affirmatively place[s] the plaintiff in a position of danger,' that is, where state action creates or exposes an individual to a danger which he or she would not have otherwise faced." *Id.* (*quoting DeShaney v. Winnebago County Dep't of Soc. Serv.,* 489 U.S. 189, 197, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989)). The problem here is not that Vinatieri cannot possibly state a substantive due process claim, but whether he has in the FAC stated a *plausible* one. More specifically, although the FAC *concludes* Mosley's friendship and alleged agreement to protect the Vallerga family caused the fight, whether it includes facts to render the conclusion plausible is another matter. Vinatieri includes no specific facts that would suggest that, prior to the fight, the Vallerga family would have been led to believe that the officer would bend the law in their favor. At least as the pleadings are currently constituted, it would be an unwarranted leap to infer Mosley "affirmatively placed" Vinatieri in danger of physical violence at the hands of the Vallerga

family. As to the three other officers, there are no facts whatsoever advanced in the FAC to suggest *any* involvement in the dispute between the neighbors prior to the fight. Accordingly, the fourth claim for relief must be dismissed, with leave to amend.

### e. *First Amendment Claim*

In his fifth claim, Vinatieri alleges the officers conspired to retaliate against him for complaining to government officials and agents regarding matters of public concern. Governmental action "designed to retaliate against and chill political expression strikes at the heart of the First Amendment." *Mendocino Environmental Center v. Mendocino County,* 14 F.3d 457, 464 (9th Cir.1994) (*citing Gibson v. United States,* 781 F.2d 1334, 1338 (9th Cir.1986)). "Accordingly, the victim of such action is entitled to sue the responsible" officers. *Id.* That said, a plaintiff "may not recover merely on the basis of a speculative 'chill' due to generalized and legitimate law enforcement initiatives." *Id.* "To demonstrate retaliation in violation of the First Amendment, [a plaintiff] must ultimately prove first that [defendants] took action that would chill or silence a person of ordinary firmness from future First Amendment activities." *Dietrich v. John Ascuaga's Nugget,* 548 F.3d 892, 900–01 (9th Cir.2008) (*quoting Skoog v. County of Clackamas,* 469 F.3d 1221, 1231–32 (9th Cir.2006)). "The second requirement is [that] ... [plaintiff] must ultimately prove that [defendants'] desire to cause the chilling effect was a but-for cause of [defendants'] action." *Id.* (alterations in original).

In the FAC, Vinatieri claims he lodged complaints with myriad officials regarding the Vallerga family's land use and the environmental effects of their activities. He avers that "[b]eginning in ap-

proximately 2007," he notified the Sheriff's Department in particular of oil and other toxic waste stored improperly on the Vallerga property. (FAC § 23.) Vinatieri also notes that he was engaged in civil litigation with members of the Vallerga family with land use and environmental issues at the heart of the lawsuit. Although Vinatieri does not aver any individual officers *knew* of this litigation, he recounts two occasions on which Mosley observed him in court. One involved a hearing for a temporary restraining order sought by the Vallerga family against Vinatieri. At the other, Vinatieri appeared to resolve a traffic violation citation. Accordingly, Vinatieri concludes the officers sought to chill his speech relating to his environmental concerns and also to discourage him from pursuing relief through the judicial system. What is not clear from the FAC is whether the individual officers actually knew of his complaints or of the civil litigation. Even if Mosley did see Vinatieri in court, the incidents involved a vehicle code violation and a setting where Vinatieri was the *responding* party. At least as pleaded, it is not clear how the officers' behavior was linked to and intended to curb Vinatieri's speech. This claim therefore must be dismissed, with leave to amend.

### f. *Fourth Amendment*

 Vinatieri asserts that the officers conspired to violate his right to be free from unreasonable search and seizure. He insists he was "seized" when Michael Vallerga and Eileen McMullen knocked him to the ground and began kicking him. The Fourth Amendment claim is also advanced against the private individuals (namely, under a theory that they operated at the time as "state actors"). The private actors did not join the motion to dismiss, and this Order focuses only on moving defendants' participation in the alleged conspiracy. Again, Vinatieri has only alleged that Wong, Johnson and Ortiz "agreed" not to arrest Vallerga or McMullen *after* the incident occurred and it is not plausible, at least under the facts included in the FAC, that they could have conspired to *cause* it. As to Mosley, Vinatieri suggests McMullen and Vallerga were acting as "joint actors" with law enforcement when the altercation occurred.[1] Although Vinatieri has detailed facts suggestive of a friendship between Mosley and the Vallerga family, a plausible inference does not follow that McMullen and Vallerga acted at Mosley's behest. The claim therefore must be denied, with leave to amend.

### 2. *Municipal Liability*

 Plaintiffs seek to recover damages from Napa County pursuant to 42 U.S.C. section 1983. The County moves to dismiss all claims brought against it on the ground that Vinatieri has failed to attribute the alleged tortious acts of the officers to a city policy or procedure or an omission amounting to deliberate indifference. "[A] municipality cannot be held liable under section 1983 on a respondeat superior theory." *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Instead, a plaintiff can allege that the action inflicting injury flowed from either an explicitly adopted or a tacitly authorized city policy. *Monell*, 436 U.S. at 690–91, 98 S.Ct. 2018; *Harris v. City of Roseburg*, 664 F.2d 1121,

---

**1.** Vinatieri correctly notes that a private actor may operate under color of state law where he or she acts "jointly" with a state officer. *See, e.g., Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) ("To act 'under color' of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents.").

1130 (9th Cir.1981) (" 'Official policy' within the meaning of *Monell* [encompasses situations] where a municipality 'impliedly or tacitly authorized, approved, or encouraged' illegal conduct by its police officers.") (*quoting Turpin v. Mailet*, 619 F.2d 196, 201 (2nd Cir.), cert. denied, 449 U.S. 1016, 101 S.Ct. 577, 66 L.Ed.2d 475 (1980)). A plaintiff need not allege that the municipality *itself* violated his or her constitutional rights or directed one of its employees to do so, but can allege that through its *omissions* the municipality is responsible for a constitutional violation committed by one of its employees, even though the municipality's policies were facially constitutional, the municipality did not direct the employee to take the unconstitutional action, and the municipality did not have the state of mind required to prove the underlying violation. *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1186 (9th Cir.2002) (*citing City of Canton v. Harris*, 489 U.S. 378, 387–89, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)) (emphasis added). That said, because *Monell* held that a municipality may not be held liable under a theory of respondeat superior, a plaintiff must show that the municipality's deliberate indifference[2] led to the omission and it caused the employee to commit the constitutional violation. *Id.* In order to do so, the plaintiff must also show that the municipality was on actual or constructive notice that its omission would likely result in a constitutional violation. *Id.* (*citing Farmer v.*

*Brennan*, 511 U.S. 825, 841, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)). Taken together, then, Vinatieri must allege: (1) that an officer employed by the County violated Vinatieri's rights; (2) that the County has customs or policies that amount to deliberate indifference (as that phrase was defined by the Supreme Court in *Canton*); and (3) that these policies were the moving force behind the officer's violation of Vinatieri's constitutional rights, in the sense that the County would have prevented the violation with an appropriate policy. *Id.* at 1193–94 (*citing Amos v. City of Page*, 257 F.3d 1086, 1094 (9th Cir.2001)).

■ The County argues Vinatieri has not introduced facts suggestive of even a tacitly authorized policy favoring the Vallerga family over Patrick Vinatieri. All that Vinatieri has alleged is an allegiance between a particular officer, Mosley, and the Vallerga family. Although Vinatieri *concludes* that the County endorsed Mosley's behavior, factual support in the FAC is missing. The FAC notes that on one occasion the Sheriff asserted that he could not proscribe a friendship between Mosley and the Vallerga family, and at other times, that the Sheriff was not available to meet personally with Vinatieri to discuss the August 30 incident. Without more, these are not facts plausibly suggestive of a county policy endorsing or condoning the constitutional violations alleged, or even that the Sheriff knew enough about the

---

**2.** In *Canton,* the Supreme Court delved into the meaning of "deliberate indifference" in the context of *Monell* liability. The Court held that a "failure to train" police officers may serve as the basis for liability under section 1983 "where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." 489 U.S. at 388, 109 S.Ct. 1197. "Policies of omission regarding the supervision of employees, then can be 'policies' or 'customs' that create municipal liabili-

ty under *Monell,* but only if the omission reflects a 'deliberate' or 'conscious' choice to countenance the possibility of a constitutional violation." *Gibson,* 290 F.3d at 1194 (*quoting Canton,* 489 U.S. at 389–90, 109 S.Ct. 1197). When the need to remedy an omission "is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, ... the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Canton,* 489 U.S. at 390, 109 S.Ct. 1197.

neighbors' dispute to have been alert to the possibility officers beneath him would abuse authority to favor one side over the other. Vinatieri's *Monell* claim therefore must be dismissed, with leave to amend.

## V. CONCLUSION

For the reasons stated above, Vinatieri's FAC must be dismissed in its entirety. With the exception of his medical needs claim, Vinatieri may amend his FAC consistent with this Order. He must do so within thirty days of this Order's issuance. Failure to amend may result in dismissal for failure to prosecute.

IT IS SO ORDERED.